# Exhibit A-1



New York State Unified Court System



# *WebCivil Supreme - eFiled Documents Detail*

Court:             **Suffolk Supreme Court**
Index Number:   **607250/2023**
Case Name:       **Nasca, Dean et al vs. BYTEDANCE LTD. et al**
Case Type:       **Tort-Other**
Track:            **Standard**

## Document List - Click on the document name to view the document

| Document # | Date Received/Filed | Document | Description | Motion # | Filing User |
|---|---|---|---|---|---|
| 1 | 03/21/2023 | SUMMONS + COMPLAINT | --none-- | | HARRIS LEE MARKS |
| 2 | 03/22/2023 | NOTICE OF MOTION | Notice of Motion for PHV Admission of Matthew P. Bergman, Esq. | 001 | HARRIS LEE MARKS |
| 3 | 03/22/2023 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | Affirmation in Support of Application to Admit Matthew Bergman PHV | 001 | HARRIS LEE MARKS |
| 4 | 03/22/2023 | EXHIBIT(S) | Exhibit A - Affirmation of Matthew P. Bergman | 001 | HARRIS LEE MARKS |
| 5 | 03/22/2023 | EXHIBIT(S) | Exhibit B - Certificate of Conformity | 001 | HARRIS LEE MARKS |
| 6 | 03/22/2023 | EXHIBIT(S) | Exhibit C - Certificate of Good Standing for States of Washington and Oregon | 001 | HARRIS LEE MARKS |
| 7 | 03/22/2023 | EXHIBIT(S) | Exhibit D - Proposed Order | 001 | HARRIS LEE MARKS |
| 8 | 03/22/2023 | RJI -RE: NOTICE OF MOTION | --none-- | 001 | HARRIS LEE MARKS |
| 9 | 03/22/2023 | ADDENDUM - GENERAL (840A) | --none-- | 001 | HARRIS LEE MARKS |
| 10 | 04/13/2023 | NOTICE OF REMOVAL / REMAND (POST RJI) | Notice to State Court of Filing Notice of Removal | | KRISTEN R. FOURNIER |
| 11 | 04/13/2023 | EXHIBIT(S) | Notice of Removal Filed in US District Court, Eastern District of NY, Case No. 2:23-cv-02786 | | KRISTEN R. FOURNIER |
| 12 | 05/16/2023 | AFFIRMATION/AFFIDAVIT OF SERVICE | Certificate of Service of Notice to State Court of Notice of Removal (NYSCEF Doc. Nos. 10-11) | | KRISTEN R. FOURNIER |
| 13 | 11/09/2023 | FEDERAL COURT ORDER (COPY) | remand back to State | | Suffolk County court user |
| 14 | 11/09/2023 | AFFIRMATION/AFFIDAVIT OF SERVICE | AOS of S&C and Motion to Bytedance Ltd. | 001 | HARRIS LEE MARKS |
| 15 | 11/09/2023 | AFFIRMATION/AFFIDAVIT OF SERVICE | AOS of S&C and Motion to TikTok Inc. | 001 | HARRIS LEE MARKS |
| 16 | 11/09/2023 | AFFIRMATION/AFFIDAVIT OF SERVICE | AOS of S&C and Motion to Bytdance Inc. | 001 | HARRIS LEE MARKS |
| 17 | 11/09/2023 | AFFIRMATION/AFFIDAVIT OF SERVICE | AOS of S&C and Motion to MTA | 001 | HARRIS LEE MARKS |
| 18 | 11/09/2023 | AFFIRMATION/AFFIDAVIT OF SERVICE | AOS of S&C and Motion to Town of Islip | 001 | HARRIS LEE MARKS |
| 19 | 11/09/2023 | AFFIRMATION/AFFIDAVIT OF SERVICE | AOS of S&C and Motion to LIRR | 001 | HARRIS LEE MARKS |
| 20 | 11/09/2023 | AFFIRMATION/AFFIDAVIT OF SERVICE | AOS of S&C and Motion to MTA LIRR | 001 | HARRIS LEE MARKS |
| 21 | 12/22/2023 | STIPULATION - OTHER | --none-- | | HARRIS LEE MARKS |
| 22 | 01/03/2024 | NOTICE OF MOTION | --none-- | 002 | WILLIAM DOUGLAS WEXLER |
| 23 | 01/03/2024 | AFFIDAVIT OR AFFIRMATION IN SUPPORT | --none-- | 002 | WILLIAM DOUGLAS WEXLER |
| 24 | 01/03/2024 | EXHIBIT(S) | Aff'd of E. Warner | 002 | WILLIAM DOUGLAS WEXLER |
| 25 | 01/03/2024 | AFFIRMATION/AFFIDAVIT OF SERVICE | Certificate of Service | 002 | WILLIAM DOUGLAS WEXLER |
| 26 | 01/08/2024 | NOTICE OF MOTION | --none-- | 003 | MEGAN LAWLESS |

| 27 | 01/08/2024 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | --none-- | 003 | MEGAN ALICE LAWLESS |
| 28 | 01/08/2024 | EXHIBIT(S) | Defendants' Memorandum of Law | 003 | MEGAN ALICE LAWLESS |
| 29 | 01/08/2024 | EXHIBIT(S) | Indiana Decision I | 003 | MEGAN ALICE LAWLESS |
| 30 | 01/08/2024 | EXHIBIT(S) | Indiana Decision II | 003 | MEGAN ALICE LAWLESS |
| 31 | 01/08/2024 | AFFIRMATION/AFFIDAVIT OF SERVICE | --none-- | 003 | MEGAN ALICE LAWLESS |
| 32 | 01/08/2024 | NOTICE OF MOTION | --none-- | 005 | MEGAN ALICE LAWLESS |
| 33 | 01/08/2024 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | --none-- | 005 | MEGAN ALICE LAWLESS |
| 34 | 01/08/2024 | EXHIBIT(S) | MDL Complaint | 005 | MEGAN ALICE LAWLESS |
| 35 | 01/08/2024 | EXHIBIT(S) | Stipulation and Order of Dismissal - MDL | 005 | MEGAN ALICE LAWLESS |
| 36 | 01/08/2024 | EXHIBIT(S) | Memorandum and Order re Remand | 005 | MEGAN ALICE LAWLESS |
| 37 | 01/08/2024 | AFFIRMATION/AFFIDAVIT OF SERVICE | --none-- | 005 | MEGAN ALICE LAWLESS |
| 38 | 01/09/2024 | NOTICE OF MOTION | --none-- | 004 | ANDREW G. MUCCIGROSSO |
| 39 | 01/09/2024 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | --none-- | 004 | ANDREW G. MUCCIGROSSO |
| 40 | 01/09/2024 | NO FEE AUTHORIZATION (LETTER/ORDER/AFFIRMATION) | --none-- | 004 | ANDREW G. MUCCIGROSSO |
| 41 | 01/24/2024 | STIPULATION - ADJOURNMENT OF MOTION | --none-- | 002 | HARRIS LEE MARKS |
| 42 | 02/12/2024 | NOTICE OF MOTION | --none-- | 006 | MEGAN ALICE LAWLESS |
| 43 | 02/12/2024 | AFFIDAVIT OR AFFIRMATION IN SUPPORT | --none-- | 006 | MEGAN ALICE LAWLESS |
| 44 | 02/12/2024 | AFFIDAVIT | --none-- | 006 | MEGAN ALICE LAWLESS |
| 45 | 02/12/2024 | ORDER ( PROPOSED ) | --none-- | 006 | MEGAN ALICE LAWLESS |
| 46 | 02/12/2024 | STATEMENT OF AUTHORIZATION FOR ELECTRONIC FILING | --none-- | 006 | MEGAN ALICE LAWLESS |
| 47 | 02/12/2024 | NOTICE OF MOTION | --none-- | 007 | MEGAN ALICE LAWLESS |
| 48 | 02/12/2024 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | --none-- | 007 | MEGAN ALICE LAWLESS |
| 49 | 02/12/2024 | AFFIDAVIT | --none-- | 007 | MEGAN ALICE LAWLESS |
| 50 | 02/12/2024 | ORDER ( PROPOSED ) | --none-- | 007 | MEGAN ALICE LAWLESS |
| 51 | 02/12/2024 | NOTICE OF MOTION | --none-- | 008 | MEGAN ALICE LAWLESS |
| 52 | 02/12/2024 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | --none-- | 008 | MEGAN ALICE LAWLESS |
| 53 | 02/12/2024 | AFFIDAVIT | --none-- | 008 | MEGAN ALICE LAWLESS |
| 54 | 02/12/2024 | ORDER ( PROPOSED ) | --none-- | 008 | MEGAN ALICE LAWLESS |
| 55 | 02/12/2024 | NOTICE OF MOTION | --none-- | 009 | MEGAN ALICE LAWLESS |
| 56 | 02/12/2024 | AFFIDAVIT OR AFFIRMATION IN SUPPORT | --none-- | 009 | MEGAN ALICE LAWLESS |
| 57 | 02/12/2024 | AFFIDAVIT | --none-- | 009 | MEGAN ALICE LAWLESS |
| 58 | 02/12/2024 | ORDER ( PROPOSED ) | --none-- | 009 | MEGAN ALICE LAWLESS |
| 59 | 02/19/2024 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION | --none-- | 005 | HARRIS LEE MARKS |
| 60 | 02/19/2024 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION | Affirmation in Opposition to Tiktok's Motion to Dismiss | 003 | HARRIS LEE MARKS |
| 61 | 02/19/2024 | AFFIRMATION | Affirmation of Matthew P. Bergman to Opposition | 003 | HARRIS LEE MARKS |
| 62 | 02/19/2024 | EXHIBIT(S) | Exhibit A - Why We Must Call Time Out on TikTok Article 01.30.24 | 003 | HARRIS LEE MARKS |
| 63 | 02/19/2024 | EXHIBIT(S) | Exhibit B - Photo of Times Square 12.31.19 | 003 | HARRIS LEE MARKS |
| 64 | 02/19/2024 | EXHIBIT(S) | Exhibit C - TikToks Terms of Service | 003 | HARRIS LEE MARKS |
| 65 | 02/19/2024 | EXHIBIT(S) | Exhibit D - Pltf's Discovery Demands to Defts Bytedance & TikTok 01.09.24 | 003 | HARRIS LEE MARKS |
| 66 | 02/26/2024 | STIPULATION - ADJOURNMENT OF MOTION | Stipulation of Adjournment of Motion Seq. Nos. 2, 3, 4 and 5 | 003 | MEGAN ALICE LAWLESS |
| 67 | 02/29/2024 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION | --none-- | 002 | HARRIS LEE MARKS |

| 68 | 02/29/2024 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION | --none-- | 002 | HARRIS LEE MARKS |
| 69 | 02/29/2024 | MEMORANDUM OF LAW IN OPPOSITION | --none-- | 002 | HARRIS LEE MARKS |
| 70 | 02/29/2024 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION | --none-- | 004 | HARRIS LEE MARKS |
| 71 | 02/29/2024 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION | --none-- | 004 | HARRIS LEE MARKS |
| 72 | 02/29/2024 | EXHIBIT(S) | Website Printout | 004 | HARRIS LEE MARKS |
| 73 | 02/29/2024 | EXHIBIT(S) | Parking Agreement | 004 | HARRIS LEE MARKS |
| 74 | 02/29/2024 | EXHIBIT(S) | Photographs | 004 | HARRIS LEE MARKS |
| 75 | 02/29/2024 | EXHIBIT(S) | Photographs | 004 | HARRIS LEE MARKS |
| 76 | 02/29/2024 | MEMORANDUM OF LAW IN OPPOSITION | --none-- | 004 | HARRIS LEE MARKS |
| 77 | 03/04/2024 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION | Supplemental Affirmation | 002 | HARRIS LEE MARKS |
| 78 | 03/04/2024 | EXHIBIT(S) | Website Printout | 002 | HARRIS LEE MARKS |
| 79 | 03/04/2024 | EXHIBIT(S) | Parking Agreement | 002 | HARRIS LEE MARKS |
| 80 | 03/12/2024 | LETTER / CORRESPONDENCE TO JUDGE | Clarification of Plaintiff's Exhibits | 002 | HARRIS LEE MARKS |
| 81 | 03/13/2024 | STIPULATION - ADJOURNMENT OF MOTION | Stip to Adjourned Pending Motions to Dismiss (Nos. 2, 3 & 4) | 002 | WILLIAM DOUGLAS WEXLER |
| 82 | 03/13/2024 | STIPULATION - ADJOURNMENT OF MOTION | Stip to Adjourned Pending Motions to Dismiss (Nos. 2, 3 & 4) | 003 | WILLIAM DOUGLAS WEXLER |
| 83 | 03/13/2024 | STIPULATION - ADJOURNMENT OF MOTION | Stip to Adjourned Pending Motions to Dismiss (Nos. 2, 3 & 4) | 004 | WILLIAM DOUGLAS WEXLER |
| 84 | 03/13/2024 | AFFIDAVIT OR AFFIRMATION IN REPLY | --none-- | 005 | MEGAN ALICE LAWLESS |
| 85 | 03/13/2024 | AFFIRMATION/AFFIDAVIT OF SERVICE | --none-- | 005 | MEGAN ALICE LAWLESS |
| 86 | 03/13/2024 | LETTER / CORRESPONDENCE TO JUDGE | --none-- | 005 | MEGAN ALICE LAWLESS |
| 87 | 03/15/2024 | DECISION + ORDER ON MOTION | Pro Hac Vice | 001 | Abigail Frank court user |
| 88 | 03/15/2024 | DECISION + ORDER ON MOTION | Pro Hac Vice | 006 | Abigail Frank court user |
| 89 | 03/15/2024 | DECISION + ORDER ON MOTION | Pro Hac Vice | 007 | Abigail Frank court user |
| 90 | 03/15/2024 | DECISION + ORDER ON MOTION | Pro Hac Vice | 008 | Abigail Frank court user |
| 91 | 03/15/2024 | DECISION + ORDER ON MOTION | Pro Hac Vice | 009 | Abigail Frank court user |
| 92 | 03/18/2024 | LETTER / CORRESPONDENCE TO JUDGE | Plaintiff's Response to TikTok Oral Argument Letter | 005 | HARRIS LEE MARKS |
| 93 | 03/20/2024 | LETTER / CORRESPONDENCE TO JUDGE | In Response to Plaintiff's March 18, 2024 Letter | 005 | MEGAN ALICE LAWLESS |
| 94 | 03/20/2024 | EXHIBIT(S) | Plaintiff's Motion to Remand | 005 | MEGAN ALICE LAWLESS |
| 95 | 03/20/2024 | EXHIBIT(S) | EDNY Remand Order | 005 | MEGAN ALICE LAWLESS |
| 96 | 03/20/2024 | ORDER - SEVERANCE | MTA defendants and Town of Islip to be severed from this action | 005 | Bernadette V Meuschke court user |
| 97 PENDING | 03/20/2024 | ORDER TO SHOW CAUSE ( PROPOSED ) | --none-- | | HARRIS LEE MARKS |
| 98 | 03/20/2024 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP | --none-- | | HARRIS LEE MARKS |

Close

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 5 of 115 PageID #: 15

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

-----------------------------------------------------------------------X

DEAN NASCA and MICHELLE NASCA, *as Administrators of the Estate of* CHASE NASCA, DEAN NASCA, and MICHELLE NASCA, *individually*,

                         Plaintiffs,

      -against-

BYTEDANCE LTD.; BYTEDANCE, INC.; TIKTOK, INC.; METROPOLITAN TRANSPORTATION AUTHORITY; MTA LONG ISLAND RAILROAD, LONG ISLAND RAILROAD and the TOWN OF ISLIP,

                         Defendants.

-----------------------------------------------------------------------X

Index No.:

**SUMMONS**

**JURY TRIAL DEMANDED**

Plaintiff designates
SUFFOLK COUNTY
as the place of trial

The Basis of the Venue is
Plaintiff's Residence

**TO THE ABOVE-NAMED DEFENDANTS:    YOU ARE HEREBY SUMMONED** to answer the Complaint in this Action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the Plaintiffs' attorneys within twenty (20) days after this service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is completed if this Summons is not personally delivered to you within the State of New York); and in the case of your failure to Appear or Answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
       March 21, 2023

BELLUCK & FOX, LLP
*Attorneys for Plaintiff*
546 Fifth Avenue · 5th Floor
New York, NY 10036
(212) 681-1575
By:

*Harris Marks* (signature)

Harris Marks

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
Matthew P. Bergman
Laura Marquez-Garrett
Glenn S. Draper
821 Second Avenue, Suite 2100
Seattle, WA 98104
(206) 741-4862
(*Pro Hac Vice* admission pending)

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------X
DEAN NASCA and MICHELLE NASCA, *as
Administrators of the Estate of* CHASE NASCA, DEAN
NASCA, and MICHELLE NASCA, *individually*,

                    Plaintiffs,                    **VERIFIED COMPLAINT**

    -against-

                                              Index No.:

BYTEDANCE LTD.; BYTEDANCE, INC.; TIKTOK,
INC.; METROPOLITAN TRANSPORTATION
AUTHORITY; MTA LONG ISLAND RAILROAD,
LONG ISLAND RAILROAD and the TOWN OF
ISLIP,
                    Defendants.
-------------------------------------------------------------------X

        Plaintiffs, above named, by their attorneys, BELLUCK & FOX and SOCIAL

MEDIA VICTIMS LAW CENTER for their Complaint against the defendants, allege:

> In these digital public spaces, which are privately owned and tend to be
> run for profit, there can be tension between what's best for the
> technology company and what's best for the individual user or for
> society. Business models are often built around maximizing user
> engagement as opposed to safeguarding users' health and ensuring that
> users engage with one another in safe and healthy ways. . . . Technology
> companies must step up and take responsibility for creating a safe digital
> environment for children and youth. Today, most companies are not
> transparent about the impact of their products, which prevents parents
> and young people from making informed decisions and researchers from
> identifying problems and solutions.

*Protecting Youth Mental Health,* The U.S. Surgeon General's Advisory (December 7, 2021)

        1.      Plaintiffs Dean Nasca and Michelle Nasca bring this action for wrongful

death, negligence, and survivorship against ByteDance LTD., ByteDance, Inc., TikTok,

Inc. (collectively, "TikTok" or "TikTok Defendants"), Metropolitan Transportation

Authority ("MTA"), and MTA Long Island Railroad ("MTA LIRR"), LONG ISLAND

RAILROAD (collectively, the "MTA Defendants") and the Town of Islip for the death of 16-year-old Chase Nasca and allege as follows:

2.      This lawsuit seeks to hold the TikTok Defendants responsible for directly causing the mental condition and the resulting death of Chase Nasca who died at the age of 16 after being targeted, overwhelmed, and actively goaded and encouraged by TikTok's content delivery and recommendation products, programming decisions, and content to which TikTok itself actively and materially contributed and encouraged for its own economic gain. This lawsuit further seeks to hold the MTA Defendants and Town of Islip responsible for creating a serious and foreseeable risk of harm to the plaintiff which led to his death.

3.      The TikTok Defendants are engaging in a pattern and practice of deceiving the American public through false representations and assurances as to the safety and security of its TikTok social media product. The TikTok Defendants its product to product to promote and instill familiarity and trust among its youngest users, then utilizes extended use design mechanics and mechanisms to addict those same minor users in a manner the TikTok Defendants know to be harmful to their health and well-being. At best, the TikTok Defendants make these engineered addiction-by-design and programming decisions to push young Americans into maximizing their engagement with the TikTok product by any means necessary; at worst, is the TikTok Defendants operate in a manner that intends or recklessly disregards the catastrophic harms it is inflicting on children in the United States.

4.      As only recently discovered, the TikTok Defendants have chosen to design, distribute, market, and operate TikTok in the United States in a manner that contrasts starkly with the product it distributes to children in China – which is where TikTok originated and still currently operates from, despite representations to the U.S. Government to the contrary.

> In [China's] version of TikTok, if you're under 14 years old, they show you science experiments you can do at home, museum exhibits,

3

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 8 of 115 PageID #: 18

patriotism videos and educational videos. And they also limit it to only 40 minutes per day. Now they don't ship that version of TikTok to the rest of the world. So it's almost like they recognize that technology's influencing kids' development, and they make their domestic version a spinach version of TikTok, while they ship the opium version to the rest of the world.

The version served to the west has kids hooked for hours at a time. The impact, Tristan Harris says, is predictable.

Tristan Harris: There's a survey of preteens in the U.S. and China asking, "What is the most aspirational career that you want to have?" And the U.S. the number one was "Influencer."

Bill Whitaker: Social media influencer.

Tristan Harris: And in China, the number one was "Astronaut." Again, you allow those two societies to play out for a few generations, I can tell you what your world is going to look like.[1]

5.      In the United States, TikTok claims that its proprietary algorithm is "a recommendation system that delivers content to each user that is likely to be of interest to that particular user...each person's feed is unique and tailored to that specific individual." In other words, TikTok claims to individually curate and identify videos it believes will be of interest to its users. Except that TikTok is not making recommendations to U.S. children; it is directing vulnerable youth to the subject matters TikTok selects, whether they want to see that content or not; and it is selecting content that in many cases, they do not actually want to see.

6.      The TikTok Defendants know that violent, dangerous, extreme, and psychologically disturbing content triggers a greater dopamine response in minors than safe and benign content. To maximize user engagement and increase profits, TikTok creates and co-creates such content and deliberately targets children in the United States with violent, dangerous, extreme, and psychologically disturbing content from which they cannot look away.

---

[1] https://www.cbsnews.com/news/social-media-political-polarization-60-minutes-2022-11-06/

4

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 9 of 115 PageID #: 19

7.    For years, the TikTok Defendants have had actual knowledge that it is designing and distributing its product in the United States in a manner that is dangerous and harmful to U.S. minors but has actively concealed these facts from the United States public and government regulators and failed to warn parents about harms known only to TikTok for TikTok's own economic gain. TikTok is goading American children into self-harm and suicide and is profiting at their expense, but more to the point, TikTok knows exactly what it is doing. Plaintiffs' claims arise from TikTok's own content creation, as well as its product features and designs as TikTok has chosen to operate them in the United States, including but not limited to the recommendation and connection features designed and programmed by TikTok to prioritize engagement, profits, and possibly, harm to U.S. children over the health and well-being of TikTok's minor users in the United States.

8.    Chase Nasca did not open or use a TikTok account to search for violent, inciting, and depressing videos and connections, as evidenced by, among other things, his own searches for uplifting and motivational content – which articulated interests TikTok quite literally ignored. At all times relevant, the TikTok Defendants had actual knowledge of Chase's age and vulnerabilities, including his desire to stop seeing the thousands of horrific videos – many of which TikTok collaborated on and/or encouraged – TikTok continued flooding to his For You Page several hours every day. Despite this knowledge, TikTok chose to keep goading and encouraging him to either harm others or take his own life until, ultimately, Chase chose to take his own life.

9.    Some of the videos TikTok directed to Chase suggested that young people should end their lives by stepping in front of a moving train.  Shortly after receiving one such video, Chase accessed tracks for the Long Island Railroad near his home.  The MTA Defendants and Town of Islip had affirmatively decided not to fence this section of track, despite the fact that they were aware that many other people had previously been struck by trains at or near this location.  Chase was struck by the train and killed on

5

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 10 of 115 PageID #: 20

February 18, 2022.

10.     TikTok as currently designed and operated in the United States poses a clear and present danger children and families, and Plaintiffs are one of thousands if not millions who have been harmed by what TikTok is doing.

## PARTIES AND JURISDICTION

11.     That at the time of this accident that occurred February 18, 2022, which resulted in his death, and at all times hereinafter mentioned, the decedent plaintiff, Chase Nasca, was a resident of Suffolk County in the State of New York

12.     Plaintiffs Dean Nasca and Michelle Nasca are and were residents of Suffolk County in the State of New York

13.     Plaintiffs have not entered into any User Agreements or other contractual relationships with Defendant TikTok in connection with Chase's use of the TikTok social media product. As such, in prosecuting this action Plaintiffs are not bound by any arbitration, forum selection, choice of law, or class action waiver set forth in said User Agreements. Additionally, Plaintiffs expressly disaffirm all User Agreements with Defendants into which their son may have entered into as minor.

14.     Defendant ByteDance Ltd. is a Chinese internet technology company headquartered in Beijing and incorporated in the Cayman Islands. ByteDance Ltd. owns operates and controls Defendants ByteDance, Inc. and TikTok, Inc. ByteDance Ltd. designed the unreasonably dangerous TikTok social media platform with the intention of promoting it to United States users including New York citizens. ByteDance Ltd. has purposefully availed itself of New York law by transacting business in this State, profits from TikTok's activities in the State of New York and Plaintiffs' allegations that Chase Nasca died from ByteDance Ltd.'s unreasonably dangerous design of TikTok arise out of and relate to its purposeful availment. New York's assertion of personal jurisdiction over ByteDance Ltd is therefore fully consistent with historic notions of fair play and substantial justice.

6

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 11 of 115 PageID #: 21

15. One Percent of ByteDance Ltd. is owned by the Chinese Government and a Chinese Government official serves on the ByteDance Ltd Board of Directors. ByteDance Ltd. has a strategic partnership with the Chinese Ministry of Public Security. TikTok captures vast swaths of information from its users, including Internet and other network activity information such as location data and browsing and search histories. ByteDance Ltd. admits that its personnel outside the United States can access information from American TikTok users including public videos and comments. On information and belief ByteDance Ltd. also has access to United States TikTok users' private information.

16. Defendant ByteDance, Inc. is a Delaware corporation with its principal place of business in Mountain View, CA. Defendant ByteDance owns and/or operates TikTok, Inc., and owns and/or operates the TikTok social media platform, an application that is widely marketed by TikTok and available to users throughout the United States and in New York. ByteDance Inc. has purposefully availed itself of New York law by transacting business in this State, profits from TikTok's activities in the State of New York and Plaintiffs' allegations that Chase Nasca died from the unreasonably dangerous design of TikTok arise out of and relate to its purposeful availment. New York's assertion of personal jurisdiction over ByteDance Inc. is therefore fully consistent with historic notions of fair play and substantial justice.

17. Defendant TikTok, Inc. is a California corporation with its principal place of business in Culver City, CA. Defendant TikTok owns and operates the TikTok social media platform, an application that is widely marketed by TikTok and available to users throughout the United States and in New York. TikTok Inc. has purposefully availed itself of New York law by transacting business in this State, profits from its activities in the State of New York and Plaintiffs' allegations that Chase Nasca died from the unreasonably dangerous design of TikTok arise out of and relate to its purposeful availment. New York's assertion of personal jurisdiction over TikTok Inc. is therefore

7

fully consistent with historic notions of fair play and substantial justice.

18. At all times relevant hereto, Defendant TikTok Inc. was acting by and through its employees, servants, agents, workmen, and/or staff, all of whom were acting within the course and scope of their employment, for and on behalf of TikTok.

19. At all times relevant hereto, Defendant ByteDance Inc. was acting by and through its employees, servants, agents, workmen, and/or staff, all of whom were acting within the course and scope of their employment, for and on behalf of ByteDance Inc.

20. TikTok is highly integrated with its Chinese parent, ByteDance Ltd.

21. TikTok's engineering manager works on both TikTok and Byte Dance's similar Chinese app, Douyin. TikTok's development processes are closely intertwined with Douyin's processes. TikTok employees and data systems are also deeply interwoven into Byte Dance's ecosystem.

22. That at all times hereinafter mentioned METROPOLITAN TRANSPORTATION AUTHORITY was and still is a municipal corporation, duly organized and existing pursuant to the laws of the State of New York.

23. That at all times hereinafter mentioned MTA LONG ISLAND RAILROAD was and still is a municipal corporation, duly organized and existing pursuant to the laws of the State of New York.

24. That at all times hereinafter mentioned LONG ISLAND RAILROAD was and still is a municipal corporation, duly organized and existing pursuant to the laws of the State of New York.

25. That all times hereinafter mentioned the TOWN OF ISLIP was and is a municipal corporation duly organized and existing pursuant to the laws of the State of New York.

26. That prior hereto and within the time prescribed by law, a sworn Notice of Claim, stating among other things, the time when and place where the injuries and damages were sustained, together with plaintiff's demands for adjustment or payment

8

Case 2:24-cv-02061-NGG-JMW     Document 1-1     Filed 03/20/24     Page 13 of 115 PageID #: 23

thereof, was served and that thereafter METROPOLITAN TRANSPORTATION AUTHORITY, MTA LONG ISLAND RAILROAD, and LONG ISLAND RAILROAD refused or neglected for more than 30 days and up to the commencement of this action to make any adjustment or payment thereof, and that thereafter, and within the time provide by law, this action was commenced.

27.     The MTA LIRR 50-h hearing of Dean Nasca took place on October 12, 2022. Although present, the MTA LIRR chose not to depose Michelle Nasca. The MTA was served a notice of claim and did not request a 50-h hearing.

28.     That on July 7, 2022, pursuant to the General Municipal Law, a Statutory 50-H hearing of the plaintiff was held.

29.     That prior hereto and within the time prescribed by law, a sworn Notice of Claim, stating among other things, the time when and place where the injuries and damages were sustained, together with plaintiff's demands for adjustment or payment thereof, was served and that thereafter MTA Defendants, refused or neglected for more than 30 days and up to the commencement of this action to make any adjustment or payment thereof, and that thereafter, and within the time provide by law, this action was commenced.

30.     That on October 12, 2022, and January 10, 2023, pursuant to the General Municipal Law, a Statutory 50-H hearing of the plaintiffs were held.

31.     On July 7, 2022, the 50-h hearing of Dean Nasca occurred and on January 10, 2023, the 50-h hearing of Michelle Nasca occurred, with regards to Defendant TOWN OF ISLIP.

32.     That prior hereto and within the time prescribed by law, a sworn Notice of Claim, stating among other things, the time when and place where the injuries and damages were sustained, together with plaintiff's demands for adjustment or payment thereof, was served and that thereafter THE TOWN OF ISLIP, refused or neglected for more than 30 days and up to the commencement of this action to make any adjustment

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 14 of 115 PageID #: 24

or payment thereof, and that thereafter, and within the time provide by law, this action was commenced.

33.    Since complete diversity does not exist between plaintiffs and defendants, removal is precluded.

34.    The Tik Tok Defendants transact business in New York with New York residents.

35.    Plaintiffs' claims set forth herein arise out of and relate to the Tik Tok Defendants' activities in the State of New York,

36.    The Tik Tok Defendants have purposefully availed themselves of the benefit of transacting business in New York with New York residents.

37.    The Tik Tok Defendants advertise and encourages use of the TikTok product at issue in New York.

38.    The Tik Tok Defendants have employees and physical offices in New York.

39.    The Tik Tok Defendants enter into millions of contracts with New York residents, including as relating to use of the TikTok social media product.

40.    The Tik Tok Defendants distribute the TikTok social media product to overwhelming percentages of New York children, teens, and young adults.

41.    The Tik Tok Defendants generate and send emails and other communications to New York residents, including Chase Nasca.

42.    The Tik Tok Defendants design and distributes push notifications, recommendations, and other communications to New York residents, aimed at encouraging addiction and use of the TikTok social media product, as TikTok did here.

43.    The Tik Tok Defendants actively and extensively collect personal information, including location related information, belonging to New York residents, including Chase Nasca.

44.    The Tik Tok Defendants generates substantial revenue from New York

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 15 of 115 PageID #: 25

activities that dwarfs what most New York-based businesses generate.

45. The Tik Tok Defendants continue to interact with New York residents or use of their TikTok social media product, because the revenue they obtain because of New York users and having users in New York is significant.

46. Decedent plaintiff, acquired, used, and received communications from the Tik Tok Defendants and the TikTok product, in the State of New York

## FACTS

### A. TikTok Social Media Product

47. TikTok is known as a video-sharing app, where users can create, share, and view short video clips, and is highly integrated with ByteDance Ltd.

48. Known in China as Doujin, TikTok hosts a variety of short-form user videos, from genres like pranks, stunts, tricks, jokes, dance, and entertainment with durations from 15 seconds to ten minutes. TikTok is the international version of Doujin, which was originally released in the Chinese market in September 2016.

49. In 2017, TikTok was launched for iOS and Android in most markets outside of mainland China; however, it became available worldwide only after merging with another Chinese social media service, Musical.ly, on August 2, 2018.

50. Users on TikTok who open the TikTok application are automatically shown an endless stream of videos selected by ByteDance Ltd.'s technology to show content on each user's For You Page ("FYP") based upon each user's demographics, likes, prior activity on the app, and other factors and data points known only to TikTok.

51. ByteDance exclusively controls and operates the TikTok platform for profit, which creates advertising revenue through maximizing the amount of time users spend on the platform and their level of engagement. The greater the amount of time that young users spend on TikTok, the greater the advertising revenue TikTok earns.

52. While TikTok purports to have a minimum age requirement of 13-years-old, it does little to verify user age or enforce its age limitations despite knowledge that

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 16 of 115 PageID
#: 26

underage use is pervasive. Underage TikTok users often post videos of themselves in which they clearly are not old enough to be using the TikTok social media product. On information and belief, TikTok's sophisticated algorithms can identify when a user has crooked teeth or a crack in their bedroom wall, so there is little question that those same algorithms can identify underage children in posted videos. But also, TikTok has actual knowledge of underage users.

53.     For example, in July 2020, TikTok reported that more than a third of its 49 million daily users in the United States were 14 years old or younger. And while some of those users were 13 or 14, at least one former employee reported that TikTok had actual knowledge of children even younger based on videos posted on the TikTok platform – yet failed to promptly take down those videos or close those accounts.[2] In fact, TikTok regularly knows or should know of underage users with accounts and who post videos on its platform, whether because of its technologies, viewing by TikTok employees, and/or flagging by other TikTok users. In many such instances, TikTok does not suspend the account, require age verification, or notify the underage user's parents of such prohibited use. TikTok also has actual knowledge based on the thousands of user related data it collects and/or purchases from other websites and third parties.

54.     TikTok does not seek parental consent for underage users or provide warnings or adequate controls that would allow parents to monitor and limit the use of TikTok by their children. TikTok does not verify user age, enabling and encouraging teens and children to open TikTok accounts, providing any age they want, without parental knowledge or consent.

55.     Further, based on TikTok data leaked to the New York Times, internal TikTok documents show that the number of daily U.S. users in July of 2020 estimated by TikTok to be 14 or young—18 million—was almost as large as the number of over-

---

[2] Raymond Zhong & Sheera Frenkel, *A Third of TikTok's U.S. Users May Be 14 or Under, Raising Safety Questions*, N.Y. Times, Aug. 14, 2020, *available at* https://www.nytimes.com/2020/08/14/technology/TikTok-underage-users-ftc.html

14 users, around 20 million. While the rest of TikTok's U.S. users were classified as being "of unknown age."[3]

56.    Pew Research published in August 2022 identified TikTok as the second most popular app among U.S. teens ages 13 to 17, behind only YouTube,[4]



Millions of teens in the United States are using the TikTok product every, single day, and are being subjected by TikTok to significant risk of serious physical, mental, and emotional harm as a result.

---

[3] *Id.*
[4] https://www.pewresearch.org/internet/2022/08/10/teens-social-media-and-technology-2022/

13

Case 2:24-cv-02061-NGG-JMW     Document 1-1     Filed 03/20/24     Page 18 of 115 PageID
#: 28

**B.     TikTok's Business Model is Based on Maximizing User Engagement**

57.     TikTok is a social media application which can be downloaded from Apple's App Store and Google's Google Play store. It is intended to be used on mobile devices but can also be accessed online at TikTok.com. According to the App Store, TikTok is intended for children "12+".

58.     TikTok advertises its application as "free," insofar as consumers do not pay money to download or use the product. However, TikTok makes its astronomical profits by targeting advertisements, harmful accounts, and TikTok created content to children and by finding unique and increasingly dangerous ways to keep those young users hooked on its social media product. TikTok receives revenue from advertisers who pay a premium to target advertisements to specific demographic groups of TikTok users including, and specifically, malleable U.S. users under the age of 18. TikTok also receives revenue from selling its U.S. users' data, including data belonging to minors, to third parties.

59.     The amount of revenue TikTok receives is based upon the amount of time and user engagement on its platform, which directly correlates with the number of advertisements that can be shown to each user.

60.     TikTok is designed around a series of design features that do not add to the communication and communication utility of the application, but instead seek to exploit users' susceptibility to persuasive design and unlimited accumulation of unpredictable and uncertain rewards, including "likes," "followers" and "views." In the hands of minors, this design is unreasonably dangerous to their mental well-being.

61.     According to industry insiders, TikTok has employed thousands of engineers to help make the TikTok product maximally addicting. For example, TikTok's "pull to refresh" is based on how slot machines operate. It creates an endless feed, designed to manipulate brain chemistry and to prevent natural end points that would otherwise encourage users to move on to other activities.

14

62.     TikTok does not warn minor users or their parents of the addictive design of the TikTok product. On the contrary, TikTok actively tries to conceal the dangerous and addictive nature of its product, lulling U.S. users and parents into a false sense of security. This includes consistently playing down its product's negative effects on teens in public statements and advertising, making false or materially misleading statements concerning product safety, marketing TikTok as a family application that is fun and safe for all ages, and refusing to make its research public or available to academics or lawmakers who have asked for it.

63.     It was reasonably foreseeable to the TikTok Defendants that a significant number of its minor users would be injured by its decisions to pursue and implement "engineered addiction" as part of its social media product offerings; particularly since TikTok then marketed and distributed its product to millions of minors in the U.S. alone. For years, TikTok failed to warn users and their parents, and actively concealed the truth.

64.     The TikTok Defendants designed its TikTok product and its business model in a manner that promoted these harms to minor users in the United States and, as the designer of its product, was in a position to control any risk of harm to minor users.

## C.     The TikTok is a Product

65.     The TikTok application is a video sharing social media application where TikTok and its users create, share, and view short video clips. TikTok is the designer, provider, and sole distributor of the TikTok application.

66.     The TikTok Defendants distribute the TikTok application into the stream of commerce. In fact, the TikTok application has been downloaded more than 130 million times in the U.S. and was ranked by Cloudflare in 2021 as the most popular website. "TikTok was the world's most-visited website in 2021, overtaking YouTube in

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 20 of 115 PageID #: 30

US watch time and Facebook in app downloads for the first time."[5]

67.     The TikTok Defendants profit from the distribution of TikTok into the marketplace. The TikTok product creates advertising revenue through maximizing the amount of time users spend on the platform and their level of engagement. That is, the greater the amount of time that TikTok can keep young users on the TikTok product, the greater the advertising revenue that TikTok earns. TikTok has been wildly successful, with its revenue skyrocketing since the onset of the pandemic and only continuing to grow,



68.     TikTok also builds into the design of its product certain functions and features that addict users, particularly adolescents and young adults, causing them to spend as much time on the product as possible through advanced analytics and TikTok designed and programmed recommendation systems, tailored to each user's interests and vulnerabilities – at least, this is how TikTok designs its product to function in the United States. TikTok as designed and distributed in China is very different from TikTok as designed and distributed in the United States and, presumably, other parts of the world. *See,* *e.g.,* https://www.cbsnews.com/news/social-media-political-polarization-60-

---

[5] Emily Baker-White, *Inside Project Texas, TikTok's Big Answer To US Lawmakers' China Fears*, Buzzfeed, Mar. 10, 2022, https://www.buzzfeednews.com/article/emilybakerwhite/tiktok-project-texas-bytedance-user-data

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 21 of 115 PageID #: 31

minutes-2022-11-06/ ("the version that's served to Chinese consumers, called Douyin, is very different from the one available in the west.").

69.    In the United States, users on TikTok who open the TikTok application are automatically shown an endless stream of videos selected by a technology developed by the TikTok Defendants that identifies and automatically pushes TikTok and third party created content, paid advertisements, TikTok embedded content, and recommended connections to each user's For You Page ("FYP"). The TikTok Defendants closely guard the secret of its algorithmic formulas, but those formulas are believed to be based on individual user demographics, likes, prior activity on the app, as well as trackers and other mechanisms TikTok embeds into the metadata of all videos and advertisements, and thousands of other data points known only to TikTok.

70.    TikTok's algorithmic formulas are not designed to and do not operate in the same way traditional internet algorithms operate. For example, only, traditional internet algorithms operate based on user input, through which the end goal is achieved. These are user-driven algorithms, which typically do not cause the types of extreme harms TikTok's algorithms cause for the simple reason that they are user driven – users decide what they want to see and search results are based on those expressed interests. In sharp contrast, TikTok's social media algorithms are built around, start with, and operate based on TikTok's programming of its ultimate goal first. TikTok's algorithms are not based on and ultimately care very little about user input, instead prioritizing whatever TikTok programs them to prioritize – and it programs them in the United States to prioritize engagement, at the direct expense of user safety. TikTok's algorithms then collect and use personal data to achieve the programmed goal. This is one reason why TikTok's product is so dangerous to consumers.

71.    The TikTok Defendants market and design the TikTok social media product to be used by minors. They have spent millions of dollars researching and analyzing minor users to find ways to make its product more appealing and addictive to

17

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 22 of 115 PageID #: 32

this age group, which the TikTok Defendants see as the key to the long-term profitability and success.

72.     TikTok is known within the social media industry as a leader in recruiting and maintaining engagement of youth. Other major players study and emulate TikTok, seeking to attract minor users because minors are such a pliable and addictive – thus profitable – demographic. For instance, documents leaked by a whistleblower in 2021 show Facebook and Instagram's (now Meta) field research studying TikTok discuss why TikTok appeals to minors and reflecting TikTok's efforts in that regard. It acknowledges that TikTok "alleviates boredom" and provides "altered-state fun."



*See, e.g.,* https://www.businessinsider.com/leaked-docs-facebook-papers-instagram-competition-tiktok-youtube-snapchat-2021-12?op=1#whats-so-great-about-tiktok-one-slide-said-2. TikTok leans into this reputation, marketing itself as a fun and family-friendly app,[6] while it is anything but.

73.     The TikTok Defendants are aware that large numbers of children under

---

[6] *See, e.g.,* https://variety.com/2020/digital/news/tiktok-advertising-brand-campaign-sale-bytedance-1234738607/ (TikTok launched its biggest ad campaign to date in the U.S. in August 2020).

Case 2:24-cv-02061-NGG-JMW     Document 1-1     Filed 03/20/24     Page 23 of 115 PageID
#: 33

the age of 13 use the TikTok product and that large numbers of children under the age
of 18 use TikTok without parental consent. TikTok is designed in a manner that allows
and/or does not prevent such use. The TikTok Defendants also are aware that their
designs and programming decisions are causing incredible physical, mental, and
emotional harms to a significant number of its minor users but has made the business
decision to stay the course in order to maximize engagement and revenue.

### D.     ByteDance Ltd Designed TikTok to Promote Problematic Use in Young Users

74.     ByteDance Ltd. designs its TikTok product to promote problematic use
in young users, ranging from its extended use mechanics and product features (discussed
in more detail above) to its programming of connection and promotion technologies (at
least as programmed in the United States) in manner it intends to have the effect of cause
young users to spend as much time on the application as possible.

75.     An internal TikTok document – titled "TikTok Algo 101" and created by
ByteDance Ltd. Engineering team in Beijing – offers details about both the product's
mathematical core and insight into the company's understanding of human nature. As
explained in TikTok Algo 101, in the pursuit of TikTok's "ultimate goal" of adding daily
active users TikTok chose to optimize for two closely related metrics in the stream of
videos it serves: "retention" — that is, whether a user comes back — and "time spent."

76.     Likewise, a recent Wall Street Journal report revealed how TikTok relies
heavily on how much time users spend watching each video to steer them toward more
videos that will keep them scrolling, and that process can sometimes lead young U.S.
viewers down dangerous rabbit holes, in particular, toward accounts that promote suicide
or self-harm.

77.     Another article, by the New York Times, explained how TikTok markets
itself as an "artificial intelligence company." "The most obvious clue is right there when
you open the app: the first thing you see isn't a feed of your friends, but a page called

19

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 24 of 115 PageID #: 34

'For You.' It's an algorithmic feed based on videos you've interacted with, or even just watched. It never runs out of material. It is not, unless you train it to be, full of people you know, or things you've explicitly told it you want to see. It's full of things that you seem to have demonstrated you want to watch, no matter what you actually say you want to watch … Imagine a version of Facebook that was able to fill your feed before you'd friended a single person. That's TikTok." [7]

78.     On December 14, 2022, the Center for Countering Digital Hate (CCDH) published a report titled "Defective by Design," which likewise concludes and illustrates the manner in which "TikTok pushes harmful content promoting eating disorders and self-harm into users' feeds." Attached hereto and incorporated herein as **Exhibit A** is a true and correct copy of "Defective by Design." These defects are not about third-party content, but rather, TikTok's design and programming decisions. TikTok is targeting and inundating minors with content meant to addict them to its product, at the direct and known expense of their health and well-being. And TikTok could make its product safer for those consumers without ever removing a single piece of content.

79.     This is further confirmed by the fact that ByteDance Ltd. has actually designed and is programming a safer TikTok product for children in China,

> In [China's] version of TikTok, if you're under 14 years old, they show you science experiments you can do at home, museum exhibits, patriotism videos and educational videos. And they also limit it to only 40 minutes per day. Now they don't ship that version of TikTok to the rest of the world. So it's almost like they recognize that technology's influencing kids' development, and they make their domestic version a spinach version of TikTok, while they ship the opium version to the rest of the world.

80.     TikTok also encourages, helps create, features, and promotes various "challenges" where users film themselves engaging in behavior that mimics and "one

---

[7] John Herrman, *How TikTok is Rewriting the World*, N.Y. Times, Mar. 10, 2019, *available at* https://www.nytimes.com/2019/03/10/style/what-is-tik-tok.html

20

ups" other users posting videos related to a particular challenge. TikTok programs its systems to discourage safe challenges and encourage dangerous ones and amplifies those dangerous challenges primarily to the millions of children, teen, and young adult TikTok users, that is, those most vulnerable to such harms.

81.     TikTok not only helps create this content – from tutorials, to selecting and recommending theme-specific music, to outright asking certain users to post most content and telling them how to post it and where to post; it's technologies also then determine the content that gets directed and/or populates its user experience on the TikTok social media product. This includes content sent directly from TikTok to its users, for TikTok's own purposes, and prior to any sort of user search or request for such content. TikTok knows that its technologies are promoting and amplifying harmful content to children and teens and are operating with a degree of algorithmic discrimination that is particularly harmful to TikTok's most vulnerable user groups.

82.     The TikTok Defendants designed and is operating the TikTok product in the United States with the goal of addicting young users at any cost, for its own benefit. TikTok prioritizes engagement over user safety in the U.S., and some examples of this include, but are not limited to:

    a.  TikTok has actual knowledge of underage U.S. users on its platform and has chosen to not verify age or enforce its own age limitations even when it knows or has reason to know of such unauthorized use.

    b.  TikTok does not seek parental consent for U.S. underage users or provide any warnings or controls that would allow parents in the United States to monitor and limit the use of TikTok by their children, despite its own Terms of Service, which prohibit use of its product by persons under 18 without parental consent.

    c.  Until mid 2021, TikTok by default made all U.S. users' profiles "public," meaning that strangers, often adults, could view and message underage

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 26 of 115 PageID
#: 36

users of the TikTok app.

d. TikTok collects information from its minor users in the U.S. and utilizes
extensive amounts of user, device, and other personal information to
target minor users in the U.S. in a manner that TikTok knows or should
know to be causing harm to a substantial number of its minor users in the
U.S.

**E.    TikTok is an Information Content Provider**

83.    TikTok also is an information content provider, or ICP.

84.    TikTok becomes actively involved in the creation of certain content in a
manner and to the degree of a material creator or co-creator. For example, if a TikTok
video garners a specific threshold of views, TikTok then makes recommendations to
enhance the video, reaches out to and actively engages with the user who posted (referred
to by TikTok once that threshold is met as a "Creator" or more commonly referred to
as an "Influencer"), and provides special tools, as well as recommendations, input as to
content and structure, instructional videos, and other support and contributions to
ensure and encourage further content development and success – translating to increased
revenue for TikTok.

85.    When asked in March of 2022 how TikTok users get paid, TikTok's CEO
stated as follows,

> The first is if you become if you have enough followers, certain brands will get in
> touch with you, either through us [TikTok] or otherwise for you to represent the
> brand … so that's one way some of our creators get paid. Beyond that we have
> provided them with tools to monetize, to get in touch with their followers, and
> to monetize that as well.

86.    TikTok's involvement at this point includes but is not limited to
communications with creators prompting and asking them to GO LIVE, telling them
what they should post and how they should post it (for example, coaching them through
how to create a Story Time video and how specifically to structure those videos to leave

viewers in suspense so that they will keep viewing the series), which hashtags they should use to get more views, which songs are popular and song suggestions curated to the theme of the proposed post, and other collaborative tools and communications that TikTok uses to help create and amplify content TikTok believes (based on a user's number of followers and past views) will make it money.

87.    TikTok obtains PayPal information from these Creators and sends them money daily, with communications and full-screen notifications urging them to post more and to post on multiple surfaces of the TikTok product. TikTok likewise promises these Creators that it will amplify their content and promotes them based solely on Creator status. For example, TikTok will provide a Creator with more than 100,000 views in the first 24-hours of a post no matter the content of their video and due to its determination (based on followers and views) that the Creator is likely to be profitable for TikTok.

88.    These are not passive or unsubstantial contributions. They are meaningful and material contributions TikTok makes to the videos themselves, including themed based contributions and recommendations which, ultimately and based on how TikTok serves up harmful content to minors, causes harms in and of itself.

89.    TikTok also has entered into multiple contracts with third parties to enable TikTok's use of such content, because of the degree to which TikTok is involved in content creation. For example, In November 2020, TikTok announced a new agreement with Sony Music Entertainment to make songs available across the TikTok app[8]; in December 2020, TikTok announced another such agreement with Warner Music Group "WMG"[9]; and in February of 2021, TikTok announced a "global" licensing agreement

---

[8] https://newsroom.tiktok.com/en-us/tiktok-announces-agreement-with-sony-music-entertainment

[9] https://www.musicbusinessworldwide.com/warner-music-group-inks-licensing-deal-with-tiktok/; *see also* https://hitsdailydouble.com/news&id=324524&title=WARNER-TIKTOK-AGREE-TO-NEW-LICENSING-DEAL (Former WMG executives Ole Obermann and Tracy Gardner recently joined TikTok to oversee global music development; Gardner now holds the title of Head of Label Licensing & Partnerships at TikTok., while Obermann is TikTok's Global Head of Music).

with Universal Music Group (UMG).[10] Michael Nash, Executive Vice President of Digital Strategy at UMG, reported on the UMG deal that,

> UMG and TikTok will now work more closely than ever to promote ambitious experimentation, innovation and collaboration — with the shared objective of developing new music experiences and features.[11]

90.    TikTok materially encourages, develops, and contributes to Creator and/or Influencer videos – including but not limited to suggesting specific songs to match video theme, including videos depicting suicide, violence, and/or self-harm – and has obtained licensing agreements to protect TikTok itself from potential copyright infringement liability. Such liability would not be a matter of concern for TikTok, but for the degree to which it has knowledge of and is involved in creation of the videos featuring that music in the first place.

91.    In its Terms of Service ("Last updated: February 2019") TikTok also requires that all users license to TikTok an unconditional, irrevocable royalty-free, fully transferable, perpetual worldwide license to use, modify, adapt, reproduce, publish, transmit all material submitted by Users onto TikTok. TikTok further requires that all users waive any rights to inspect or approve their material being used for marketing or promotional materials. Further, they require that users waive any and all rights of privacy, publicity. TikTok requires that all users grant TikTok total control over the material that's published – including the right to cut, crop, and edit. Through this licensing provision, TikTok effectively becomes the legal owner of its users' content.

92.    Third, TikTok modifies third-party content to make it its own in significant and material ways. On information and belief, all TikTok content and associated metadata is modified to include tracking systems, and every time the content is viewed, tracking codes and other data are downloaded to the device and information

---

[10] https://www.musicbusinessworldwide.com/tiktok-and-universal-music-group-sign-global-licensing-deal/

[11] https://www.musicbusinessworldwide.com/tiktok-and-universal-music-group-sign-global-licensing-deal/

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 29 of 115 PageID #: 39

is actively relayed to TikTok's server.

93.    TikTok is doing, on a practical level, is piecing apart the third-party content and embedding its own content to track what each user does, in combination with tens of thousands of personal data points it buys, sells, and collects on each user, to then serve users its own content. But for TikTok's content, the viewer might spend ten minutes viewing the blender post and move on, instead, the viewer spends three hours engaged with the TikTok product – and the two hours and fifty minutes that the viewer did not want or intend to spend is time spent consuming TikTok's content. TikTok's content is the content that is harming TikTok users, and harmed Chase Nasca.

**F.    The TikTok Defendants Design Complex Recommendation Technologies to Lock-In Young Users**

94.    TikTok is (at least as designed and distributed to users in the United States) is intentionally designed to maximize users' engagement and screen time. The architecture and coding underlying its design features are expressly intended to exploit human psychology and driven by the most advanced computer and artificial intelligence.

95.    The TikTok product is designed and progressively modified to promote excessive use in the U.S. that it knows is intended to addict its users.

96.    One of these features present in TikTok is its feed feature designed to match users with other users' accounts, accounts that TikTok assesses will keep that original user scrolling. No two individuals are matched with the same accounts. Its recommendation feature matches users with an unlimited and never ending "feed" that TikTok determines specifically for that person. TikTok is well-aware that its feed design and programming decisions promote unlimited "scrolling"—a type of use that studies have identified as detrimental to users' mental health – however, TikTok maintains this harmful product feature as it allows TikTok to display more advertisements and, thus, obtain more revenue.

97.    Often the most violent, high risk, psychologically harmful and cruel

25

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 30 of 115 PageID #: 40

accounts are promoted by TikTok to U.S. teens in their feeds, because this material draws young users in and increases their engagement.

98.     Users do not control what accounts their feed matches them with – that is controlled entirely by TikTok.

99.     The addictive nature of TikTok's product and the complex and psychologically manipulative design of its product is hidden and unknown to ordinary users.

100.    At the same time, TikTok is designed with unique product features designed to limit parents' ability to monitor and prevent problematic use by minors.

101.    It was reasonably foreseeable and/or known to the TikTok Defendants that a significant number of its minor users would be injured by their design and programming decisions to prioritize engagement and revenue over user safety; particularly given their decision to then market and distribute its product to millions of minors in the U.S. alone. It was not only reasonably foreseeable, but the TikTok Defendants had had had actual knowledge of the harms its product is causing among minors in the United States for years.

102.    In December of 2021, for example, the Wall Street Journal published an article about TikTok and how it sends kids in the U.S. down dangerous rabbit holes. The Article is titled "'The Corpse Bridge Diet': How TikTok Inundates Teens With Eating-Disorder Videos." *See* https://www.wsj.com/articles/how-tiktok-inundates-teens-with-eating-disorder-videos-11639754848 ("TikTok is flooding teen users with videos of rapid-weight-loss competitions and ways to purge food that health professionals say contribute to a wave of eating-disorder cases spreading across the country."). Like the harmful eating disorder accounts discussed in the article, TikTok uses the same underlying design and programming to match other users (including and predominantly teen boys) to violent and/or depressive suicide-promoting accounts.

103.    TikTok designed its product and its business model in a manner that

promoted these harms to minor users in the U.S. and, as the designer of its product, was in the exclusive position to control any risk of harm to these minor users.

## G.    Young Users' Incomplete Brain Development Renders Them Particularly Susceptible to TikTok's Manipulative Product Design

104.    The human brain is still developing during adolescence in parallel to their psychosocial development. Specifically, adolescents' brains are not yet fully developed in regions related to risk evaluation, emotional regulation, and impulse control.

105.    The frontal lobes - and in particular the prefrontal cortex - of the brain play an essential part in higher-order cognitive functions, impulse control, and executive decision- making. These regions of the brain are central to the process of planning and decision-making, including the evaluation of future consequences and the weighing of risk and reward. They are also essential to the ability to control emotions and inhibit impulses. MRI studies have shown that the prefrontal cortex is one of the last regions of the brain to mature.

106.    During childhood and adolescence, the brain is maturing in at least two major ways. First, the brain undergoes myelination, the process through which the neural pathways connecting different parts of the brain become insulated with white fatty tissue called myelin. Second, during childhood and adolescence, the brain is undergoing "pruning" – the paring away of unused synapses, leading to more efficient neural connections. Through myelination and pruning, the brain's frontal lobes change to help the brain work faster and more efficiently, improving the "executive" functions of the frontal lobes, including impulse control and risk evaluation. This shift in the brain's composition continues throughout adolescence and continues into young adulthood.

107.    In late adolescence, important aspects of brain maturation remain incomplete, particularly those involving the brain's executive functions and the coordinated activity of regions involved in emotion and cognition. As such, the part of the brain that is critical for control of impulses and emotions and mature, considered

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 32 of 115 PageID #: 42

decision-making is still developing during adolescence, consistent with the demonstrated behavioral and psychosocial immaturity of juveniles.

108. The recommendation features TikTok has designed and implemented in its social media product as distributed in the United States exploits minor users diminished decision-making capacity, impulse control, emotional maturity, and psychological resiliency caused by users' incomplete brain development. TikTok knows that because its minor users' frontal lobes are not fully developed, such users are much more likely to sustain serious physical and psychological harm through their social media use than adult users. Nevertheless, TikTok has failed to design the TikTok product as distributed in the United States with any protections to account for and ameliorate the psychosocial immaturity of its minor users. Instead, in the United States, TikTok exploits its young users' immaturity, knowing they are susceptible to addiction and easily influenced by the peers and idols they see on TikTok.

## H. The TikTok Defendants Misrepresent the Addictive Design and Effects of their TikTok Product

109. During the relevant time period, TikTok stated in public comments that the TikTok product is not addictive and was not designed to be addictive. TikTok knew or should have known that those statements were untrue.

110. In fact, over the last several years, TikTok has made myriad false or materially misleading representations to the U.S. Government and American consumers to portray its product as fun, safe, and secure when, in fact, it knew or had reason to know of the terrible, even fatal, harms it was causing American children.

111. For example, in January of 2020, ByteDance board member William "Bill" Ford – Chairman and CEO of the established and well-respected, American growth equity firm, General Atlantic – represented on TikTok's behalf and on CNBC that

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 33 of 115 PageID #: 43

TikTok was careful in the way they built its product.[12]

> First of all, it's a terrific company, ByteDance … they have been very careful how they've built TikTok. It's from the very first day been built outside the Chinese fire wall with very, very careful curation around data privacy and community rule sets. … They have built this in a way that is very different from some of the other social media companies, and very cognizant about the sensitivity on data privacy.

112. In January of 2023, Bill Ford appeared again on CNBC, in a video titled "ByteDance board member: Fight against TikTok based on 'misinformation and misunderstanding.'"[13] In 2023, TikTok represented,

> We're up to over 90 million daily active users … we've been engaged with the U.S. government and national security agencies since the review started in 2020 … All of our data is in the Oracle cloud already. We've taken these concerns very seriously … I can say, as of today, our data is in the clean cloud and it's safe and secure … I think there's a lot of misinformation and misunderstanding about ByteDance and TikTok, and as I've said, we've taken all the concerns seriously, we've stayed engaged with the national security agencies … and the data's safe, the data's been safe, and the algorithm is being reviewed by Oracle.

113. On March 3, 2022 – just 12 days after Chase took his own life – TikTok CEO, Shouzi "Shou" Chew represented on the David Rubenstein Show that,[14]

> One of the most important things that I have been focusing on since I took on the role [of TikTok CEO] nearly a year ago is on the safety of our platform. This is something we take absolutely seriously, and we have elevated this as a top priority for myself and for the company. We put a significant amount of investment into it. And we believe that we need to continue to invest in Trust and Safety to stay ahead of our growth, because of the growth of the platform. So for example, making sure that our community guidelines which are published transparently online are well understood by users, making sure that we have the tools

---

[12] https://www.cnbc.com/video/2020/01/21/william-ford-private-equity-investing-squawk-box-davos-interview.html, starting at 2:34.

[13] https://www.cnbc.com/video/2023/01/17/bytedance-board-member-fight-against-tiktok-based-on-misinformation-and-misunderstanding.html

[14] *See, e.g.*, https://www.bloomberg.com/news/audio/2022-03-03/david-rubenstein-talks-to-shouzi-chew-podcast, audio version starting at 1:42; *see also* https://www.bloomberg.com/news/videos/2022-03-03/the-david-rubenstein-show-tiktok-ceo-shouzi-chew-video, video version starting at 2:10. Responding to question of how TikTok handles the situation when someone posts something dangerous, pornographic, or not appropriate.

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 34 of 115 PageID
#: 44

and the capabilities to ensure a safe environment, a safe and inclusive environment on our platform …

114.    The TikTok CEO also reported that many users say TikTok is "a breath of fresh air … the sunny corner of the internet." *Id.* He represented that "The original product has evolved over time [but] one thing that has remained very consistent for ByteDance is the mission. The mission for ByteDance today is to inspire creativity and to enrich lives." *Id.*

115.    For years, TikTok has targeted children and teens. It runs campaigns featuring teens, and with tag lines like "Family Impressions," "Familia Latina," and "TikTok Taught Me." Its commercials, advertising, and public statements also provide no warnings of the dangers of its product, instead, depicting TikTok as a fun, safe, and family-friendly social media app,[15]



116.    In October of 2021, TikTok assured members of the U.S. Congress, while testifying under oath, that it does not give information the Chinese government and has

---

[15] *See, e.g.*, https://tinuiti.com/blog/marketing-news-covid-19/tiktok-covid-19/ ("In order to ensure families can enjoy the app in safety, TikTok updated it with much-needed family safety controls like tighter restrictions on Direct Messaging for minors and better content filters"); https://pugetstaffing.filevineapp.com/docwebviewer/view/132085545 (TikTok's YouTube advertising, captured August 5 2022), as compared to https://www.forbes.com/sites/alexandralevine/2022/11/11/tiktok-private-csam-child-sexual-abuse-material/?sh=3ee644f83ad9 (new information on the dangers of TikTok, released November 14, 2022 by Forbes).

30

sought to safeguard U.S. data.[16] TikTok's head of public policy for the Americas, Michael Beckerman, testified that "We do not share information with the Chinese government," and that TikTok as "no affiliation" with Beijing ByteDance Technology. In June of 2022, however, leaked audio from more than 80 internal TikTok meetings, which include 14 statements from nine separate TikTok employees revealed that ByteDance Ltd. engineers in China had access to U.S. data from between September 2021 and January 2022 – the time frames directly at issue in this case – at a minimum.[17] To be clear, September or October of 2021 is when the TikTok technologies TikTok used in connection with Chase's account began to change, targeting him with extremely violent, harmful, and suicidal content.

117.    TikTok did not warn users or their parents of the addictive and mentally harmful effects that the use of its product was known to cause amongst minor users, like Chase Nasca. It also did not warn users or their parents of the control the Chinese government and/or companies ultimately under the control of the Chinese government continued to exercise over its systems and data – the data belonging to and, ultimately, used by TikTok against minors like Chase Nasca to their detriment.

118.    In written testimony submitted to the U.S. Congress on September 14, 2022, TikTok's COO, Vanessa Pappas, once again characterized TikTok as a fun and safe app. She made representations about TikTok's enforcement of its community guidelines, the use of human moderations, and its primary goal of creating a "welcoming and safe space for entertainment." In fact, however, TikTok was not enforcing its community guidelines. It was co-creating incredibly violent and harmful content and programming its systems consistently to direct such harmful and extreme content to children, like Chase Nasca.

119.    TikTok did not let one or two, or even a dozen, extreme and deadly videos

---

[16] https://www.reuters.com/technology/tiktok-tells-us-lawmakers-it-does-not-give-information-chinas-government-2021-10-26/
[17] https://appleinsider.com/articles/22/06/18/tiktok-staff-in-china-allegedly-accessed-us-user-data

Case 2:24-cv-02061-NGG-JMW   Document 1-1   Filed 03/26/24   Page 36 of 115 PageID #: 46

slip through its alleged technologies and safeguards. It identified, directed, promoted, and aimed tens of thousands of these extreme and deadline videos to 16-year-old Chase Nasca. These were videos advocating violence against others, self-harm, and suicide, replete with TikTok's own chosen and/or recommended soundtracks, and content that would inevitably cause serious psychological harm to its young user, and thousands of other U.S. children like him. TikTok programmed its systems to aim these videos at Chase even when he asked to see uplifting and motivational content, because TikTok prioritized its efforts to force him to keep watching over his life and the life of others. TikTok and its leadership knew that their product was operating in this manner, *because of* their design and programming decisions, and stayed the course regardless – and continued in their misrepresentations to tens of millions of Americans and the U.S. Government.

120.     TikTok has gone to significant lengths to conceal and/or avoid disclosure as to the true nature of the TikTok social media product and, had it been forthcoming at any point, millions of children would not have had unfettered access to the TikTok product and/or millions of American families – including the Nasca family – could and would have taken steps to protect their children from the harms the TikTok product was causing.

## I.     Plaintiffs Expressly Disclaim Any and All Claims Seeking to Hold TikTok Defendants Liable as the Publisher or Speaker of Any Content Provided, Posted or Created by Third Parties

121.     Plaintiffs seek to hold TikTok accountable for its own alleged acts and omissions. Plaintiffs' claims arise from TikTok's status as designers and marketers of a dangerously defective social media product, as well as TikTok's own statements and actions, and are not based on TikTok as the speaker or publisher of third-party content. TikTok's underlying design, programming, and engineering of its platform were and are inherently and purposely defective, which forms a predicate for the claims asserted

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 37 of 115 PageID #: 47

against it.

122.    The TikTok Defendants also failed to warn minor users and their parents of known dangers arising from anticipated use of the TikTok social media product. These dangers, which are unknown to ordinary consumers, do not arise from third-party content contained on the TikTok social media product, but rather, from TikTok's product designs, programming, and operational decision, including technologies programmed to affirmatively match young U.S. users to harmful accounts based on their individualized demographic data, social media activity, and tens of thousands of personal data points bought, sold, and otherwise collected by TikTok.

123.    Plaintiffs' claims seek to hold the TikTok Defendants accountable for TikTok's own, operations, conduct, and product -- not for the speech of others or for their content moderation decisions.

124.    TikTok could manifestly fulfill its legal duty to design a reasonably safe social media product and furnish adequate warnings of foreseeable dangers arising out of the use of TikTok's product without altering, deleting, or modifying the content of a single third-party post or communication.



**PLAINTIFF-SPECIFIC ALLEGATIONS**



125.    Chase Kai'ea Nasca was born on 2005. Chase was a smart and outgoing

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 38 of 115 PageID #: 48

child. He excelled at school, was athletic and participated in competitive sports; Chase was close to his family and a large circle of friends. Chase had no history of anxiety or depression, had a supportive family, involved parents, and close friends, and in late 2021, was accepted to the Olympic Development Program soccer team his third year trying out.

126.    Chase showed no outward signs of depression at any time.

127.    Chase got his first cell phone when he was in 6th grade, after moving to middle school and so his parents could reach him if needed. To his parents' knowledge, Chase did not open a TikTok account at first; though they cannot be certain as TikTok does not verify age or require parental consent and distributes its product to minors without safeguards. If Chase opened a TikTok account before 2020, he did so without his parents' knowledge.

128.    Sometime around 2019 or 2020, Chase's parents became generally aware that Chase was using TikTok. Dean and Michelle Nasca knew very little about TikTok, except that it appeared to be aimed at kids and families and marketed itself as offering silly dance videos that were all the rage. They did not consent to Chase opening a TikTok account, but also had no reason to think that the TikTok product was defective or dangerous in any way.

129.    Chase's use of the TikTok social media product resulted in a silent but severe decline in his mental health. Unbeknownst to Plaintiffs, the TikTok product's FYP feature (as programmed and controlled by TikTok itself) began matching Chase to incredible amounts of highly depressive, violent, self-harm, and suicide themed accounts. His TikTok took a dark turn sometime around October of 2021, at which point these inherently dangerous and harmful accounts comprised most if not all the content that TikTok was matching to and selecting for Chase.

130.    TikTok directed Chase to adult accounts which offered depressing and violent material a minor should not have been allowed to see. These accounts were co-creating content with TikTok, including TikTok suggesting dark, suicide themed songs

34

they could use to make their videos more impactful as well as trending hashtags they could add to ensure maximum amplification based on TikTok's programming, and other material contributions.

131. TikTok identified and amplified an incredible number of dangerous and harmful accounts, creating binge periods for Chase where he was inundated with videos and clips of suicide, hopelessness, and self-harm. TikTok began pushing to 16-year-old Chase a continuous stream of violent, hopeless, and suicide-themed videos. TikTok selected these videos for Chase even though he was searching for things like,

Bench Press Tips (December 16, 2021)

Kitchen Hacks (December 29, 2021)

BoJack Horseman Edits (January 1, 2022)

Attack on Titan Opening Song (January 9, 2022)

Trae Young Best Moments (January 28, 2022)

Motivational Speech (February 5, 2022)

Gym Motivation (February 10, 2022)

Batman

132. There is no way to recreate every horrific video TikTok selected for and sent to Chase (as per TikTok's design). However, Chase bookmarked more than 2,500 videos in his TikTok account, and those can tell us what he was searching for and what TikTok was sending him unsolicited. As recent as October 2022, more than eight months after his death, TikTok was still flooding Chase's FYP with unsolicited suicide videos.

133. Chase's parents accessed his TikTok account after his death and the following is just a tiny sampling of screenshots taken from the thousands of videos TikTok sent to Chase during the last three weeks of his life and from what TikTok is still sending to his For You page each time the account is accessed.

35

**Monday, January 24, 2022**







36

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 41 of 115 PageID #: 51

Tuesday, January 25, 2022, and Wednesday, January 26, 2022







37

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 42 of 115 PageID
#: 52

**Thursday, January 27, 2022, and Friday, January 28, 2022**





FILED: SUFFOLK COUNTY CLERK 03/21/2023 03:23 PM
NYSCEF DOC. NO. 1
INDEX NO. 607250/2023
RECEIVED NYSCEF: 03/21/2023

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 43 of 115 PageID
#: 53

**Sunday, January 30, 2022**







Case 2:24-cv-02061-NGG-JMW   Document 1-1   Filed 03/20/24   Page 44 of 115 PageID #: 54

**Monday, January 31, 2022, and Tuesday, February 1, 2022**







Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 45 of 115 PageID #: 55

**Wednesday, February 2, 2022**







41

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 46 of 115 PageID #: 56





Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 47 of 115 PageID #: 57





FILED: SUFFOLK COUNTY CLERK 03/21/2023 03:23 PM
NYSCEF DOC. NO. 1

INDEX NO. 607250/2023
RECEIVED NYSCEF: 03/21/2023



Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 49 of 115 PageID #: 59

**Thursday, February 3, 2022**







Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 51 of 115 PageID #: 61

Friday, February 4, 2022





**On Saturday, February 5, 2022, Chase Searched for "Motivational Speech"**



**And on February 5, 2022, TikTok decided that he might also "want" these,**



Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 53 of 115 PageID #: 63








Case 2:24-cv-02061-NGG-JMW   Document 1-1   Filed 03/20/24   Page 54 of 115 PageID #: 64

**Saturday, February 12, 2022**







Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 55 of 115 PageID #: 65

**Sunday, February 13, 2022**







Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 56 of 115 PageID #: 66

**Monday, February 14, 2022**



**Wednesday, February 16, 2022**







52

FILED: SUFFOLK COUNTY CLERK 03/21/2023 03:23 PM
NYSCEF DOC. NO. 1

INDEX NO. 607250/2023

RECEIVED NYSCEF: 03/21/2023

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 57 of 115 PageID #: 67

**Thursday, February 17, 2022**







Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 58 of 115 PageID #: 68

**Friday, February 18, 2022**



134. These are just a small handful of the thousands of dangerous and inappropriate accounts TikTok was flooding to Chase's account in the days before he took his life, all in an attempt to increase his level of engagement.

135. TikTok was making these programming decisions and deluging Chase with violent and suicide themed videos, despite the fact that he was actively searching for topics like "Motivational Speech" and "Gym Motivation" on February 5 and 10, 2022, respectively. The TikTok defendants knew or should have known that Chase was engaged in harmful use of their product, that their decision to send him thousands of extreme and harmful videos was negatively impacting his mental health, and moreover, based on Chase's own searches, TikTok knew or should have known that he was looking for the opposite content from what TikTok was serving him and that TikTok was pushing him over the edge.

136. TikTok, through a product it had convinced Chase to trust and see as safe, continued to flood Chase – a minor – with content he was not interested in and did not want to see. TikTok acted, at best, with reckless disregard for the horrific and foreseeable

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 59 of 115 PageID #: 69

consequences its design and programming decisions would have, and Chase died a result.

137.    On Friday, February 18, 2022, Chase went to the gym and worked out, then stopped at the train tracks on his way home.

138.    This section of track is and adjacent land is owned, maintained and controlled by the MTA defendants and the Town of Islip. Despite the fact that many other individuals had been struck by trains at or near this location, the MTA defendants and Town if Islip affirmatively decided not to fence this location.

139.    At approximately 6:35 pm, Chase Nasca entered the train tracks at the uncompleted fence line at the intersection of Railroad Street and Fairview Avenue in Bayport, New York, and was struck and killed by an MTA Defendants' train.

140.    Chase messaged his friend on Snapchat, "I can't do it anymore," and was struck by a moving train.

FILED: SUFFOLK COUNTY CLERK 03/21/2023 03:23 PM
INDEX NO. 607250/2023
NYSCEF DOC. NO. 1
Case 2:24-cv-02061-NGG-JMW   Document 1-1   Filed 03/20/24   Page 60 of 115 PageID
#: 70
RECEIVED NYSCEF: 03/21/2023



Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 61 of 115 PageID
#: 71

141.    Plaintiffs never signed or gave consent for TikTok to furnish its product
to their son, much less for it to direct thousands of harmful videos to him. While they
had become generally aware that he was using TikTok, they believed, based on TikTok's
misleading marketing-and Chase's lack of outward signs of depression-- that it was age-
appropriate and safe for kids based on what they had heard and seen. Chase's parents
did not know and had no reason to think that TikTok was directing deadly accounts to
their son; and they would <u>never</u> have allowed it in their home and/or would have taken
steps to actively prohibit it had TikTok been honest about its technologies, product
design, and dangers.

142.    By late 2021, Chase had become locked into the TikTok social media
product, as TikTok intended, causing him to spend more and more time using and
exposing himself to the harmful accounts TikTok was selecting and aiming at him to
keep him using the product. Chase was being inundated with material from accounts like
the images above, and TikTok was the only one who knew what it was doing.

143.    On the evening of February 18, 2022, Chase Nasca was hit and killed by
an oncoming train. He died directly and solely, or at a minimum substantially, by the
TikTok design and engineering conduct and algorithms that led to his development of
severe depression, aided and abetted by the negligent conduct of the MTA Defendants
and the Town of Islip all of while collectively and individually constituting a proximate
cause of his injuries and death.

144.    TikTok did not just send Chase a few disturbing videos; it sent thousands
over several months and hours every day. The TikTok Defendants knew or should have
known that he was a minor, that he did not want, need, or even like the content it chose
for him (including because of his searches), that he was addicted to the platform and
thus could not stop using it, and that by its very engineering design, it was goading Chase
into harming himself or others.

145.    TikTok did not send this child the content it thought he wanted, but the

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 62 of 115 PageID #: 72

content from which it thought he could not look away.

146.    Chase did not die because TikTok allowed suicidal content to be posted to its platform or because it failed to adequately monitor or remove such content. He died because of the TikTok Defendants decisions in the design, programming, and continued operation of TikTok's technologies (things like metrics, data input, and operation speed) in the products TikTok distributes to U.S. teens.

147.    But for these design, engineering, and programming decisions made by TikTok, Chase Nasca's injuries and death would not have occurred.

148.    In deciding to prioritize minor engagement over user safety, the TikTok Defendants made a calculated business decisions and, in the United States, chose profit over human life, despite knowing that its choices are goading some young users into violence, self-harm, and suicide.

149.    In fact, TikTok is *still* sending this content to Chase's account. On October 30 and 31, 2022 – more than eight months after Chase's death – Plaintiffs accessed Chase's TikTok account and recorded the types of videos TikTok is still sending to his For You page. Plaintiffs did not ask for these videos, did not enter search terms, and did not like or otherwise interact with the videos – TikTok simply keeps sending them,

 














150. The disturbing and harmful impact of these images are amplified when viewing the videos, which include content and music TikTok created and/or recommended.

151. But for TikTok's failure to conduct reasonable verification of age and identity, and/or obtain parental consent, and TikTok's failure to warn, Chase would not have been exposed to TikTok's inherently dangerous and defective features and designs.

152. But for TikTok's decision to promote, push, and match Chase to accounts containing excessive and unacceptably harmful videos, influencing him and encouraging him to engage in self-harm, and causing and materially contributing to mental health harms, Chase would not have died at the age of 16.

153. This tragedy and the unimaginable suffering endured by Chase was entirely preventable had TikTok not ignored the health and safety of its users, particularly children in the United States using its product, in an effort to rake in greater profits.

154. As a direct and proximate result of TikTok's unreasonably dangerous

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 65 of 115 PageID #: 75

product, failures to warn, and negligence, which resulted in Chase's death, Chase's beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including, but not limited to, loss of support, loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling, and loss of guidance.

155.    As a direct and proximate result of TikTok's unreasonably dangerous product, failure to warn, and negligence Plaintiffs claim all damages suffered by the Estate of Chase Nasca and his wrongful death beneficiaries by reason of his death, including, without limiting the generality thereof, the following: the severe injuries to Chase which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering, and other intangible losses which Chase suffered prior to his death; the loss of future earning capacity suffered by Chase from the date of his death until the time in the future that he would have lived had he not died as a result of the injuries he sustained; and the loss and total limitation and deprivation of his normal activities, pursuits and pleasures from the date of his death until such time in the future as he would have lived had he not died as a result of the injuries sustained by reason of TikTok's carelessness, negligence, gross negligence, recklessness, strict liability, failure to warn, and defective design.

156.    As a direct and proximate result of TikTok's unreasonably dangerous product, failure to warn, and negligence, combined with the railroad defendants' and Town of Islip's decision to not fence this area or take other precautions to prevent access to the area, Plaintiffs have been forced to suffer the death and loss of their 16-year-old son.

157.    Chase is survived by his mother Michelle, his father Dean, and his older brothers Cade and Derian. All four have suffered and continue to suffer incredible emotional harm from Defendants' actions.

61

**AND AS FOR THE FIRST CAUSE OF ACTION**

**STRICT PRODUCT LIABILITY (Design Defect)**

**(Against the TikTok Defendants)**

158. Plaintiffs reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

159. Under Restatement (Second) of Torts § 402(a)and New York Law one who sells any product in a defective condition unreasonably dangerous to the user is subject to liability for physical harm thereby caused to the user if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition which it was sold.

160. The TikTok product as designed and distributed to users in the United States is defective because the foreseeable risks of harm posed by the product's design could have been reduced or avoided by the adoption of a reasonable alternative design by TikTok and the omission of the alternative design renders the product not reasonably safe. These defective conditions rendered the product unreasonably dangerous to persons or property and existed at the time the product left TikTok's control, reached the user or consumer without substantial change in the condition and its defective condition was a cause of Plaintiffs' injuries.

161. The TikTok Defendants deliberately designed, manufactured, marketed, and sold social media products that were knowingly unreasonably dangerous because they were designed to be addictive to the minor users to whom TikTok actively marketed and because, by the very nature of the design, engineering, and programming of the platform, the foreseeable use of TikTok's product causes and/or exacerbates mental and physical harm to minor users.

162. The inherent defect in the design, engineering, and programming of TikTok were known to TikTok Defendants at the time of its manufacture and ongoing modifications.

62

Case 2:24-cv-02061-NGG-JMW   Document 1-1   Filed 03/20/24   Page 67 of 115 PageID #: 77

163.    A reasonable person would conclude that the utility of TikTok did not outweigh the risk inherent in marketing a product designed in that manner, particularly as to the risks posed to minor children like Chase.

164.    A high probability existed that, as designed, TikTok posed a likelihood of causing injury to minors.

165.    A safer design and programming exists by which minor users would not be inundated with self-harm content, but TikTok chose to ignore or disregard it, or purposefully chose to implement and maintain its defective design to attain higher profits.

166.    As a minor, Chase had in no instance the ability to discern TikTok's potential for injury, addiction, and mental changes.  Defendant TikTok's products were unreasonably dangerous because they contained numerous design characteristics that are not necessary for the utility provided to the user but are unreasonably dangerous and implemented by TikTok solely to increase the profits it derives from each additional user and the length of time it can keep each user dependent on its product.

**A.    Inadequate Safeguards from Harmful and Exploitative Accounts**

167.    TikTok is defectively designed.

168.    As designed and distributed in the United States, TikTok's recommendation and other product features are not reasonably safe because they affirmatively direct minor users to harmful and inappropriate accounts while failing to deploy feasible safeguards to protect vulnerable teens from such harmful exposures. It is feasible to design a social media product that substantially distinguishes between harmful and innocuous users and protects minor users from being exposed to harmful users without altering, modifying, or deleting any third-party content posted on TikTok's social media product. It is likewise feasible to design a social media product that does not operate recommendation features at all and/or operates them in a manner that prioritizes user safety over engagement and revenue to TikTok. The cost of designing

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 68 of 115 PageID #: 78

and/or programming these products to incorporate these safeguards would be negligible while benefit would be high in terms of reducing the quantum of mental and physical harm sustained by minor users and their families.

169.    The TikTok Defendants know that these product features cause a significant number of harms to their minor users, such as encouragement of self-harm and suicide, and death.

170.    Reasonable users and their parents would not expect that Defendant TikTok's products would knowingly expose them to such harmful accounts and/or would direct them to harmful accounts at all, much less in the manipulative and coercive manner that they do.

### B.    Inadequate Parental Control and Monitoring

171.    TikTok is defectively designed.

172.    Defendant TikTok has intentionally designed its TikTok product to frustrate the exercise of parental responsibility by its minor users' parents. Parents have a right to monitor their children's social media activity to protect them from harm. TikTok has designed a product that makes it difficult, if not impossible, for parents to exercise parental responsibility.

173.    It is feasible to design a social media product that requires parental consent for users under the age of 18.

174.    Defendant TikTok's products are also defective for lack of parental controls, permission, and monitoring capability available on many other devices and applications, and lack of notifications to parents when minors are engaged in inherently harmful activities.

175.    TikTok is designed with specific product features intended to prevent and/or interfere with parents' reasonable and lawful exercise of parental control, permission, and monitoring capability available on many other devices and applications.

## C.    Design of Addictive Social Media Products

176.    TikTok is defectively designed.

177.    As designed, the TikTok social media product is addictive to minor users. Addiction is not restricted to substance abuse disorders. Rather, the working definition of addiction promulgated in the seminal article Addictive behaviors: Etiology and Treatment published by the American Psychological Association in its 1988 Annual Review of Psychology defines addiction as,

> a repetitive habit pattern that increases the risk of disease and/or associate personal and social problems. Addictive behaviors are often experienced subjectively as 'loss of control' – the behavior contrives to occur despite volitional attempts to abstain or moderate use. These habit patterns are typically characterized by immediate gratification (short term reward), often coupled with delayed deleterious effects (long term costs). Attempts to change an addictive behavior (via treatment or self-initiation) are typically marked with high relapse rate.

178.    Addiction researchers agree that addiction involves six core components: (1) salience—the activity dominates thinking and behavior; (2) mood modification—the activity modifies/improves mood; (3) tolerance—increasing amounts of the activity are required to achieve previous effects; (4) withdrawal—the occurrence of unpleasant feelings when the activity is discontinued or suddenly reduced; (5) conflict—the activity causes conflicts in relationships, in work/education, and other activities; and (6) relapse—a tendency to revert to earlier patterns of the activity after abstinence or control.

179.    Social media addiction has emerged as a problem of global concern, with researchers all over the world conducting studies to evaluate how pervasive the problem is. Addictive social media use is manifested when a user (1) becomes preoccupied by social media (salience); (2) uses social media in order to reduce negative feelings (mood modification); (3) gradually uses social media more and more in order to get the same pleasure from it (tolerance/craving); (4) suffers distress if prohibited from using social media (withdrawal); (5) sacrifices other obligations and/ or causes harm to other important life areas because of their social media use (conflict/functional impairment); and (6) seeks to curtail their use of social media without success (relapse/loss of control).

180.    The Bergen Facebook Addiction Scale (BFAS) was specifically developed by psychologists to assess subjects' social media use using the aforementioned addiction criteria and is by far the most widely used measure of social media addiction. Originally designed for Facebook, BFAS has since been generalized to all social media. BFAS has been translated into dozens of languages, including Chinese, and is used by researchers throughout the world to measure social media addiction.

181.    BFAS asks subjects to consider their social media usage with respect to the six following statements and answer either (1) very rarely, (2) rarely, (3) sometimes, (4) often, or (5) very often,

a.      You spend a lot of time thinking about social media or planning how to use it.

b.      You feel an urge to use social media more and more.

c.      You use social media in order to forget about personal problems.

d.      You have tried to cut down on the use of social media without success.

e.      You become restless or troubled if you are prohibited from using social media.

f.      You use social media so much that it has had a negative impact on your job/studies.

Subjects who score a "4" or "5" on at least 4 of those statements are deemed to suffer from social media addiction.

182.    Addictive use of social media by minors is psychologically and neurologically analogous to addiction to internet gaming disorder as described in the American Psychiatric Association's 2013 Diagnostic and Statistical Manual of Mental Disorders (DSM-5), which is used by mental health professionals to diagnose mental disorders. Gaming addiction is a recognized mental health disorder by the World Health Organization and International Classification of Diseases and is functionally and psychologically equivalent to social media addiction. The diagnostic symptoms of social

66

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 71 of 115 PageID #: 81

media addiction among minors are the same as the symptoms of addictive gaming promulgated in DSM 5 and include,

    a.    Preoccupation with social media and withdrawal symptoms (sadness, anxiety, irritability) when device is taken away or not possible (sadness, anxiety, irritability).

    b.    Tolerance, the need to spend more time using social media to satisfy the urge.

    c.    Inability to reduce social media usages, unsuccessful attempts to quit gaming.

    d.    Giving up other activities, loss of interest in previously enjoyed activities due to social media usage.

    e.    Continuing to use social media despite problems.

    f.    Deceiving family members or others about the amount of time spent on social media.

    g.    The use of social media to relieve negative moods, such as guilt or hopelessness.

    h.    and Jeopardized school or work performance or relationships due to social media usage.

183.    TikTok's advertising profits are directly tied to the quantity of its users' online time and engagement, and its product features are designed to maximize the time users spend using the product through product designs that addict them to the platform. Reasonable minor users and their parents do not expect that online social media platforms are psychologically and neurologically addictive.

184.    It is feasible to make the TikTok product not addictive to minor users by turning off or even simply slowing recommendation technologies, limiting the frequency and duration of access, and suspending service during sleeping hours. Designing software that limits the frequency and duration of minor users' screen use and suspends service

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 72 of 115 PageID #: 82

during sleeping hours could be accomplished at negligible cost; whereas the benefit of minor users maintaining healthy sleep patterns would be a significant reduction in depression, attempted and completed suicide, and other forms self-harm among this vulnerable age cohort.

### D. Inadequate Notification of Parents of Dangerous and Problematic Social Media Usage by Minor Users

185.    TikTok is defectively designed.

186.    TikTok product is not reasonably safe as designed because it does not include any safeguards to notify users and their parents of usage that TikTok knows to be problematic and likely to cause negative mental health effects to users, including excessive passive use and use disruptive of normal sleep patterns or exposure to harmful amounts of inappropriate accounts.

187.    It is reasonable for young users and parents to expect that social media products that actively promote their platform to minors and young adults will undertake reasonable efforts to notify users and, in the case of minors, their parents when such use becomes excessive or harmful. It is feasible for TikTok to design a product that identifies a significant percentage of its youngest users who are using the product more than three hours per day or using it during sleeping hours or otherwise are being exposed to harmful accounts at negligible cost.

188.    Defendant TikTok's product is not reasonably safe as designed because, despite numerous reported instances of TikTok directing harmful accounts to minors, TikTok has not undertaken reasonable design changes to protect its users from these harms, including changing its recommendation technologies programming, restricting its collection and/or use of personal information and data with regard to minor accounts, or notifying parents of such harmful accounts and problematic use by a minor user. TikTok's failure to address these known defects and/or harms is incomprehensible.

189.    It is reasonable for parents to expect that platforms such as TikTok, which

68

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 73 of 115 PageID #: 83

actively promote their services to minors, will undertake reasonable efforts to protect such users from known harms, and implement technological safeguards to notify parents by text, email, or other reasonable means that their child is in danger.

190. As a proximate result of these dangerous and defective design attributes of Defendant TikTok's product, Chase Nasca suffered severe mental and physical harms, and death. Plaintiffs did not know, and in the exercise of reasonable diligence could not have known of these defective designs in TikTok's product until after these harms had already occurred.

191. As a result of these dangerous and defective design attributes of Defendant TikTok's product, Plaintiffs suffered severe emotional distress, physical harms, and pecuniary hardship.

192. The TikTok Defendants are further liable to Plaintiffs for punitive damages based upon the willful and wanton design of its product that was intentionally marketed and sold to underage users, whom it knew would be seriously harmed through their use of TikTok.

**AND AS FOR A SECOND CAUSE OF ACTION**

**STRICT PRODUCT LIABILITY (Failure to Warn)**

**(Against the TikTok Defendants)**

193. Plaintiffs reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

194. The TikTok product is defective because of inadequate instructions or warnings because the foreseeable risks of harm posed by this product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings renders the product not reasonably safe. This defective condition rendered the product unreasonably dangerous to persons or property, existed at the time the product left TikTok's control, reached the user or consumer without substantial change in the condition in which it was sold, and

69

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 74 of 115 PageID #: 84

were a cause of Plaintiffs' injuries.

195. TikTok is unreasonably dangerous and defective because it contains no adequate warning to minor users or parents regarding the addictive design and effects of TikTok or nature and design of TikTok's harmful "for you" technologies, and the fact that TikTok purposefully channels and directs harmful and dangerous accounts to minor users as a means of increasing engagement.

196. TikTok failed to warn users or parents that their children would be inundated with accounts creating extreme and harmful material, which TikTok selected and sent even when such account was not requested or wanted by the minor user.

197. The magnitude of harm from exposure to the TikTok product is horrific, ranging from simple diversion from academic, athletic, and face-to-face socialization to sleep loss, severe depression, anxiety, self-harm, and suicide. Minors harmed by the TikTok product continue to use that product even when it is causing them harm, and because they do not have the experience, knowledge, or development to recognize such harms and/or feel like they do not have a choice due to the level of dependency the TikTok product creates in such minor users. TikTok has designed its product to be maximally addicting specifically to minors and young adults, for which TikTok also failed to provide warning of any kind.

198. The TikTok Defendants had actual knowledge of these harms.

199. TikTok is unreasonably dangerous because it lacks any warnings that foreseeable product use can disrupt healthy sleep patterns or specific warnings to parents when their child's product usage exceeds healthy levels, involves material from harmful accounts, or occurs during sleep hours. Excessive screen time is harmful to adolescents' mental health and sleep patterns and emotional well-being. Reasonable and responsible parents are not able to accurately monitor their child's screen time because most adolescents own or can obtain access to mobile devices and engage in social media use outside their parents' presence.

200.    It is feasible for TikTok to provide warnings and to make other product related modifications that would prevent many of these harms at negligible cost to TikTok.

201.    The TikTok Defendants knew about these harms, knew that its users and their parents would not be able to safely use the TikTok product without warnings, and failed to provide warnings that were adequate to make the product reasonably safe during ordinary and foreseeable use by children.

202.    As a result of The TikTok Defendant's failure to warn, Chase Nasca suffered severe mental and physical harms due to his use of the TikTok product, including death.

203.    The failure to adequately warn was a proximate cause of Chase Nasca's development of his mental condition, and his resulting death.

204.    As a result of TikTok Defendants' failure to warn, Plaintiffs have suffered emotional distress and pecuniary hardship. TikTok Defendants are further liable to Plaintiffs for punitive damages based upon their willful and wanton failure to warn of known dangers of the TikTok product, which was deliberately marketed and sold to minor users, whom they knew would be seriously harmed through their use of TikTok.

## AND AS FOR A THIRD CAUSE OF ACTION

## NEGLIGENCE

### (Against the TikTok Defendants)

205.    Plaintiffs reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

206.    TikTok Defendants are responsible for the design, manufacture, and marketing of TikTok, and TikTok is a product.

207.    At all relevant times, the TikTok Defendants had a duty to exercise reasonable care and caution for the safety of individuals using its TikTok product, including Plaintiffs' son.

71

208.    TikTok Defendants owed a heightened duty of care to minor and young adult users of the TikTok product because adolescents' brains are not fully developed which results in a diminished capacity to make responsible decisions regarding social media use, eschew self-destructive behaviors, and overcome emotional and psychological harm from negative and dangerous social media encounters.

209.    TikTok owed the children and young adults who visited its TikTok social media platform and from whom it derives billions of dollars per year in advertising revenue a duty of ordinary care substantially similar to that owed by physical business owners to its business invitees.

210.    TikTok Defendants were negligent, grossly negligent, reckless and/or careless in that it failed to exercise ordinary care and caution for the safety of those children and young adults to whom it provided the TikTok social media product – children and young adults like Chase Nasca. Defendants were negligent in failing to conduct adequate testing and failing to allow independent academic researchers to adequately study the effects of its products and levels of problematic use amongst minors and young adults. The TikTok defendants know that the TikTok product is harmful, capable of causing and do cause extensive mental and physical harms to TikTok's youngest users, and that users are engaging in problematic, and addictive use that parent, in the case of minor users, and users themselves are helpless to monitor and prevent.

211.    The TikTok Defendants were negligent in failing to provide users and parents the tools to ensure their social media products are used in a limited and safe manner by underage users.

212.    TikTok Defendants easily could have but to this day have failed to implement safety measures that would mitigate, reduce, and/or eliminate the above-described harms, which the TikTok product causes to minor uses.

213.    As a direct and proximate result of the TikTok Defendants 'negligence, Chase Nasca suffered severe mental harm from his use of the TikTok product, including

72

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 77 of 115 PageID #: 87

death.

214.    As a direct and proximate result of the TikTok Defendants 'negligence, Plaintiffs suffered severe emotional distress and pecuniary hardship due to their son's mental and physical harms resulting from use of the TikTok social media product, which harms were foreseeable by TikTok.

215.    The TikTok Defendants' conduct was carried on with a willful and conscious disregard for the safety of Plaintiffs' child and other minor users of the TikTok product. Defendants knew about the risks to minors associated with the TikTok product yet chose to ignore those risks, downplay any safety issues in public statements, conceal knowledge relating to its product and associated harms, fail to warn minors and their parents, and delay implementation of feasible product safety features.  The TikTok Defendants' decision to prioritize profits over children's' life, safety and health is outrageous and justifies an award of exemplary damages in such a sum that will serve to deter Defendant TikTok and other social media companies from similar conduct in the future.

### AND AS FOR A FOURTH CAUSE OF ACTION
### NEGLIGENCE
#### (Against the TikTok Defendants)

216.    Plaintiffs reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

217.    TikTok Defendants are responsible for the design, manufacture, and marketing of TikTok and TikTok is a product.

218.    The TikTok Defendants knew or reasonably should have known that TikTok can be dangerous to pre-teens, teens, and young adults when used in its intended or reasonably foreseeable manner. Defendants also knew or reasonably should have known that ordinary users of TikTok, including pre-teens, teens, and young adults, would not appreciate those dangers.

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 78 of 115 PageID
                                      #: 88

219.    As a product manufacturer marketing and selling products to consumers, the TikTok Defendants had a duty to exercise ordinary care in the manufacture, marketing, and sale of the TikTok product, including a duty to warn users and, in the case of minor users, to warn their parents about the many hazards that TikTok knew to be present, but not obvious.

220.    The Tik Tok Defendants breached their duty by failing to warn users or their parents of the safety risks presented by TikTok. TikTok has not posted and, to this day, still does not post any warnings that minors' use of TikTok can lead to serious harms.

221.    TikTok does not post or display warnings that the TikTok product includes product features that are addictive and harmful, particularly to persons under 26 years old; that TikTok collects and utilizes user data to make its product progressively more addictive; that TikTok has designed its product such that it makes parental supervision impossible; that TikTok is not suitable for children under 18 without parental supervision; or that TikTok has inadequate reporting mechanisms, and will not notify parents in the event that their child is engaging in harmful use of its social media product.

222.    A reasonable company in Defendants 'position would have warned its minor users and their parents about TikTok's safety risks and would have instituted safety measures years ago to protect its users from the known dangers created by its marketing decisions and product design.

223.    Tik Tok Defendants were negligent in failing to provide adequate warnings about the dangers associated with the use of its TikTok social media product and in failing to advise users and the general public (including parents) about how and when to safely use the TikTok product and features.

224.    As a direct and proximate result of the TikTok Defendants' negligence, Chase Nasca suffered severe mental harm, including death.

225.    As a direct and proximate result of the TikTok Defendants' negligence,

Plaintiffs suffered severe emotional distress and pecuniary hardship due to their child's mental and physical harms resulting from use of the TikTok social media product, which harms were foreseeable by TikTok.

226. The TikTok Defendants' conduct was performed with a willful and conscious disregard for the safety of Plaintiffs' child and other minor users of the TikTok product. Defendants knew or should have known about the risks to minors associated with the TikTok product. Yet the TikTok Defendants' chose to ignore those risks, downplay any safety issues in public statements, conceal knowledge relating to its product and associated harms, fail to warn minors and their parents, and delay implementation of feasible product safety features. The TikTok Defendants' decision to prioritize profits over children's safety and health is outrageous and justifies an award of exemplary damages in such a sum that will serve to deter Defendant TikTok and other social media companies from similar conduct in the future.

### AND AS FOR A FIFTH CAUSE OF ACTION

### NEGLIGENCE

### (Against the MTA Defendants and the TOWN OF ISLIP)

227. Plaintiffs reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

228. On February 18, 2022, and at all times relevant herein, METROPOLITAN TRANSPORTATION AUTHORITY owned the railroad tracks, the area surrounding and adjacent to the railroad tracks, and the fence surrounding the area surrounding the railroad tracks adjacent to the intersection of Railroad Street and Fairview Avenue in Bayport, New York ("the Premises")

229. At all times relevant herein, METROPOLITAN TRANSPORTATION AUTHORITY owned the train which struck Chase Nasca. ("the Train")

230. On February 18, 2022, and at all times relevant herein, METROPOLITAN TRANSPORTATION AUTHORITY operated the Premises and

the Train.

231. On February 18, 2022, and at all times relevant herein, METROPOLITAN TRANSPORTATION AUTHORITY maintained the Premises and the Train.

232. On February 18, 2022, and at all times relevant herein, METROPOLITAN TRANSPORTATION AUTHORITY controlled the Premises and the Train.

233. On February 18, 2022, and at all times relevant herein, METROPOLITAN TRANSPORTATION AUTHORITY inspected the Premises and the Train.

234. On February 18, 2022, and at all times relevant herein, METROPOLITAN TRANSPORTATION AUTHORITY repaired the Premises and the Train.

235. On February 18, 2022, and at all times relevant herein, METROPOLITAN TRANSPORTATION AUTHORITY managed the Premises and the Train.

236. On February 18, 2022, and at all times relevant herein, METROPOLITAN TRANSPORTATION AUTHORITY supervised the Premises and the Train.

237. On February 18, 2022, and at all times relevant herein, METROPOLITAN TRANSPORTATION AUTHORITY installed the Premises and the Train.

238. On February 18, 2022, and at all times relevant herein, MTA LONG ISLAND RAILROAD owned the Premises and the Train.

239. On February 18, 2022, and at all times relevant herein, MTA LONG ISLAND RAILROAD operated the Premises and the Train.

240. On February 18, 2022, and at all times relevant herein, MTA LONG

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 81 of 115 PageID #: 91

ISLAND RAILROAD maintained the Premises and the Train.

241.    On February 18, 2022, and at all times relevant herein, MTA LONG ISLAND RAILROAD controlled the Premises and the Train.

242.    On February 18, 2022, and at all times relevant herein, MTA LONG ISLAND RAILROAD inspected the Premises and the Train.

243.    On February 18, 2022, and at all times relevant herein, MTA LONG ISLAND RAILROAD repaired the Premises and the Train.

244.    On February 18, 2022, and at all times relevant herein, MTA LONG ISLAND RAILROAD managed the Premises and the Train.

245.    On February 18, 2022, and at all times relevant herein, MTA LONG ISLAND RAILROAD supervised the Premises and the Train.

246.    On February 18, 2022, and at all times relevant herein, MTA LONG ISLAND RAILROAD installed the Premises and the Train.

247.    On February 18, 2022, and at all times relevant herein, LONG ISLAND RAILROAD owned the Premises and the Train.

248.    On February 18, 2022, and at all times relevant herein, LONG ISLAND RAILROAD operated the Premises and the Train.

249.    On February 18, 2022, and at all times relevant herein, LONG ISLAND RAILROAD maintained the Premises and the Train.

250.    On February 18, 2022, and at all times relevant herein, LONG ISLAND RAILROAD controlled the Premises and the Train.

251.    On February 18, 2022, and at all times relevant herein, LONG ISLAND RAILROAD inspected the Premises and the Train.

252.    On February 18, 2022, and at all times relevant herein, LONG ISLAND RAILROAD repaired the Premises and the Train.

253.    On February 18, 2022, and at all times relevant herein, LONG ISLAND RAILROAD managed the Premises and the Train.

254.   On February 18, 2022, and at all times relevant herein, LONG ISLAND RAILROAD supervised the Premises and the Train.

255.   On February 18, 2022, and at all times relevant herein, LONG ISLAND RAILROAD installed the Premises and the Train.

256.   On February 18, 2022, and at all times relevant herein, THE TOWN OF ISLIP owned the Premises.

257.   On February 18, 2022, and at all times relevant herein, THE TOWN OF ISLIP operated the Premises.

258.   On February 18, 2022, and at all times relevant herein, THE TOWN OF ISLIP maintained the Premises.

259.   On February 18, 2022, and at all times relevant herein, THE TOWN OF ISLIP controlled the Premises.

260.   On February 18, 2022, and at all times relevant herein, THE TOWN OF ISLIP inspected the Premises.

261.   On February 18, 2022, and at all times relevant herein, THE TOWN OF ISLIP repaired the Premises.

262.   On February 18, 2022, and at all times relevant herein, THE TOWN OF ISLIP managed the Premises.

263.   On February 18, 2022, and at all times relevant herein, THE TOWN OF ISLIP supervised the Premises.

264.   On February 18, 2022, and at all times relevant herein, THE TOWN OF ISLIP installed the Premises.

265.   While at the Premises on February 18, 2022, Chase Nasca was struck by the MTA Defendants' train near the intersection of Railroad and Fairview Avenues in the Town of Bayport causing severe personal injuries and resulted in his death.

266.   As illustrated below, the vast majority of the railroad tracks used by the MTA Defendants in and around the Town of Bayport are fenced off to prevent

78

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 83 of 115 PageID #: 93

individuals such as Chase Nasca from accessing the railroad tracks and being struck by trains.



267.    In contrast, as illustrated below, the railroad tracks adjoining Railroad and Fairview Avenues were unfenced thereby creating a dangerous condition.



268.    The dangerous condition created by the unfenced railroad tracks adjoining Fairview and Railroad Avenues was known to the MTA Defendants and the Town of

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 84 of 115 PageID #: 94

Islip prior to February 18, 2022. Over the last 20 years, at least 30 individuals have been struck and killed by trains within a half mile of the intersection of Fairview and Railroad Avenues in cases involving both suicide and accidental death. Prior to February 18, 2022, the Long Island Railroad's risk management team looked into the unfenced condition of the land abutting the railroad tracks adjoining Fairview and Railroad Avenues and determined that extending fencing to this area would be too costly to justify the expenditure. Chase Nasca's injury on the railroad tracks adjoining Fairview and Railroad Avenues was therefore foreseeable to the MTA Defendants and the Town of Islip.

269. The above mentioned occurrence and results thereof were caused by the negligence, carelessness, and recklessness, of the MTA defendants and Town of Islip servants, agents, employees, and/or licensee in the operation, management, maintenance, control, construction, supervision, of the premises; in causing, allowing and permitting said Premises at the place above to become and remain for a period of time after notice, with both actual and constructive, in a dangerous and/or hazardous condition; in causing, allowing, and permitting a trap to exist at said location in causing allowing the Premises to be left unattended without a warning sign; in failing to erect and install fence; in failing to maintain the Premises in a reasonably safe and proper condition; in failing to have efficient and sufficient personnel; in permitting a dangerous condition to exist; in creating a trap, hazard, and a nuisance; in failing to barricade or cordon off the area; in making the condition worse; in failing to warn ; in failing to take the necessary steps at the premises from being in dangerous and hazardous condition; in negligence and careless causing and permitting the Premises to be and remain in said condition for an unreasonable length of time, resulting in a hazard for plaintiff and others; in failing to take suitable and proper precautions for the safety of personnel and in being otherwise negligent and careless.

270. These actions and/or inactions by the MTA Defendants and the Town of Islip exacerbated the injuries and resulting death to Plaintiffs' decedent.

271.    But for these actions/or inactions by the MTA Defendants and the Town of Islip, the injuries and resulting death would not have occurred.

272.    That due to the reckless, careless, and negligence of the defendants by their agents, servants, and employees, decedent plaintiff Chase Nasca sustained serious and permanent personal injuries and substantial damages and ultimately died.

273.    The incident, injuries, damages, and death were caused by the deliberate indifference or gross negligence of the MTA Defendants and the TOWN OF ISLIP, without any fault on the part of the Plaintiffs or decedent.

274.    As a direct and proximate result of the MTA Defendants and the TOWN OF ISLIP's negligence, Chase Nasca suffered severe injuries, including death.

### AS AND FOR A SIXTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS

275.    Plaintiffs reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

276.    On February 18, 2022, decedent plaintiff, passed away at the age of sixteen as a result of his injuries that he sustained due to the negligence of the defendants.

277.    The decedent plaintiff, left surviving his next of him, was caused to sustain injuries which caused death by reasons of the actions of the defendants herein alleged, and was caused to sustain wrongful death as so defined and. pecuniary damages including loss of decedent's support, inheritance, care and assistance; have incurred medical, funeral and other expenses; and have suffered the loss of decedent's advice, guidance, counsel and consortium.

278.    That as a result of the negligence of defendants as aforesaid, the plaintiff Dean and Michelle Nasca, as the Administrator of the Estate of CHASE NASCA, deceased sustained damages in an amount exceeding the jurisdictional limits of all the Lower Courts.

81

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 86 of 115 PageID #: 96

## AS AND FOR A SEVENTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS

279.    Plaintiffs reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

280.    The above referenced occurrence caused decedent plaintiff, CHASE NASCA to sustain sever personal injuries, severe conscious pain, suffering and pre-impact terror which resulted in his death on February 18, 2022

281.    That as a result of the negligence acts of defendants, the decedent plaintiff, CHASE NASCA, sustained serious injuries and endured great pain, conscious pain and suffering which resulted in his death on February 18, 2022

282.    That as a result of the defendant's negligence as aforesaid, the decedent plaintiff, CHASE NASCA, sustained conscious pain, suffering and pre-impact terror/death thereby sustaining damages in an amount exceeding the jurisdictional limits of all of the Lower Courts.

## AND AS FOR AN EIGHTH CAUSE OF ACTION
## (Against the TikTok Defendants)

283.    Plaintiffs repeat and reiterate the prior allegations of this complaint as if alleged more fully below.

284.    The decedent used TikTok primarily for personal use and thereby suffered ascertainable losses as a result of the Defendants' actions in violation of the consumer protection laws of New York, including the N.Y. General Business Law § 349 & 350.

285.    Defendants' unfair methods of competition or deceptive acts or practices that were proscribed by law and were oriented to consumers such as Plaintiff, include the following:

a.   Representing that goods or services have characteristics, user benefits or qualities that they do not have;

b.   Advertising goods or services with the intent not to sell them as advertised;

c.   Over-promotion of its platform, including but not limited to over-

promotion of its safety and efficacy; and

d.   Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

286.    Defendants violated consumer protection laws through their use of false and misleading misrepresentations or omissions of material fact relating to the safety of TikTok.

287.    Defendants uniformly communicated the purported benefits of the TikTok while failing to disclose the serious and dangerous risk of direct mental harm to minors, and of the true state of the platform's safety, efficacy, and usefulness.,

288.    Defendants made these representations to consumers, including Plaintiff's minor decedent, in the marketing and advertising described herein. Defendants' conduct in connection with TikTok was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because the Defendants misleadingly, falsely and/or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, safety, efficacy, and advantages of the platform.

289.    As a result of these violations of consumer protection laws, Plaintiff have incurred damage and other expenses, for which the Defendants are liable.

290.    As a direct and proximate result of the Defendants violation of consumer protection laws concerning TikTok, as described herein, Plaintiff suffered and continue to suffer from the damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## AND AS FOR A NINTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Against the TikTok Defendants)

291.    Plaintiffs reallege each of the allegations in the preceding paragraphs as if

Case 2:24-cv-02061-NGG-JMW     Document 1-1     Filed 03/26/24     Page 88 of 115 PageID #: 98

fully set forth herein.

292.     As a result of Defendant TikTok's conduct detailed herein, TikTok received significant benefits. Because TikTok's advertising profits are directly tied to the number of user accounts and the amount of time those users spend on TikTok, it benefited directly from its engineered addiction and the harms it caused to Chase Nasca by selecting and sending him to accounts TikTok knew to be harmful, inappropriate, and/or in violation of its terms. TikTok benefited from the time Chase spent on its platform, which is why TikTok has failed to act despite knowing that its product is causing harm to minor users.

293.     It would be unjust and inequitable for Defendant TikTok to retain the ill-gotten benefits at Plaintiffs' expense, in light of TikTok's acts and omissions described herein.

294.     Accordingly, Plaintiffs seek damages in an amount to be proven at trial.

## AND AS FOR A TENTH CAUSE OF ACTION
## INVASION OF PRIVACY
### (Against the TikTok Defendants)

295.     Plaintiffs reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

296.     TikTok intentionally intruded upon Plaintiffs' solitude, seclusion, or private affairs by knowingly designing its TikTok product with features that were intended to, and did, frustrate parents' ability to monitor and control their children's social media usage.

297.     These intrusions are highly offensive to a reasonable person, particularly given TikTok's interference with the fundamental right of parenting and its exploitation of children's special vulnerabilities for commercial gain, as well as its failure to warn and active concealment of known harms.

298. Plaintiffs were harmed by Defendant TikTok's invasion of privacy, as

detailed herein.

299.    Plaintiffs therefore seek compensatory and punitive damages in amounts
to be determined at trial, as well as injunctive relief requiring Defendant TikTok to cease
the harmful practices described throughout this Complaint.

**AND AS FOR AN ELEVENTH CAUSE OF ACTION**

**INFLICTION OF EMOTIONAL DISTRESS**

**(Against the TikTok Defendants)**

300.    Plaintiffs reallege each of the allegations in the preceding paragraphs as if
fully set forth herein.

301.    The TikTok Defendants owed a duty to exercise reasonable care and
caution for the safety of minors and young adults using the TikTok product, and
breached its duty to exercise reasonable care through its negligent design of TikTok, its
failure to warn users or their parents of any of the safety risks caused by use of TikTok,
and its calculated cost-benefit decisions to not fix, restrict, or remove those dangerous
product features and to not even act on instances of actual knowledge of the harms its
product was causing.

302.    As a direct and proximate result of the TikTok Defendants' negligence,
Plaintiffs – the parents of Chase Nasca who died because of TikTok's decisions, failures
to warn, and refusals to act – suffered serious emotional distress. When a manufacturer
targets minors and causes harm to them, the natural consequence of that is harm to their
parents and/or guardians and immediate family. The TikTok Defendants not only
manufactured and distributed a defective and inherently dangerous product, but it placed
that product into Plaintiffs' home, without their knowledge or consent and under false
pretenses, targeting Chase Nasca in their own home despite the fact that they have actual
knowledge of the harms they are causing.

303.    Defendant TikTok is further liable to Plaintiffs for punitive damages based
upon its extreme departure from the ordinary standard of conduct and its reckless or

85

deliberate disregard for the wellbeing of minor users. TikTok's actions are morally blameworthy, given its knowledge of how its product is designed and operated in the United States and that it is directing inherently violent, dangerous, and otherwise harmful content to American teens, teens who do not actually request or even want the content and connections TikTok has chosen for them, and its failure to make TikTok safer to avoid the harm to Plaintiffs that it knew it was causing. Punitive damages should be awarded to prevent future harm from Defendant's negligence.

304.    At best, the TikTok Defendants chose to prioritize profits over children's safety and health. At worst, they acted with actual knowledge that it was harming American minors and did so with intent. In either scenario, the TikTok Defendants' s decisions were outrageous and justify an award of exemplary damages, in such a sum that will serve to deter Defendant TikTok and other social media companies from similar conduct in the future.

**AS AND FOR A TWELFTH CAUSE OF ACTION**

**JOINT AND SEVERAL LIABILITY**

305.    Plaintiffs repeat and reiterate the prior allegations of this complaint as if alleged more fully below:

306.    The limitations on liability set forth in NY Civ. Prac. L. Art. 16 §1601 do not apply because the following exemptions apply:

307.    Prior to the accident or occurrence on which the claim is based, plaintiffs and defendants entered into a written contract in which the defendant expressly agreed to indemnify the claimant for the type of loss suffered. See NY Civ. Prac. L. Art. 16 §1602(2)(1)(a).

308.    Defendants are a public employee, and plaintiff is entitled to full indemnification pursuant to §50-k of the general municipal law or §§17, 18 of the public officer's law. See NY Civ. Prac. L. Art. 16 §1602(1)(b).

309.    Plaintiffs have sustained "grave injury" as defined in §11 of the workers'

86

compensation law. See NY Civ. Prac. L. Art. 16 §1602(4).

310.    Plaintiff alleges a cause of action requiring proof of intent. See NY Civ. Prac. L. Art. 16 §1602(5).

311.    Defendants are liable by reason of his use, operation, or ownership of a motor vehicle or motorcycle, as those terms are defined respectively in §§ 311, 125 of the vehicle and traffic law. See NY Civ. Prac. L. Art. 16 §1602(6).

312.    Defendants acted with reckless disregard for the safety of others. See NY Civ. Prac. L. Art. 16 §1602(7).

313.    Plaintiffs alleges that defendants are liable for violations of article 10 of the labor law. See NY Civ. Prac. L. Art. 16 §1602(8).

314.    Defendant unlawfully released into the environment a substance hazardous to public health, safety or the environment, a substance acutely hazardous to public health, safety or the environment or a hazardous waste, as defined in articles 37 and 27 of the environmental conservation law and in violation of article 71 of such law. See NY Civ. Prac. L. Art. 16 §1602(9).

315.    Plaintiff brings a products liability claim, the manufacturer of the product is not a party to the action and jurisdiction over the manufacturer could not with due diligence be obtained and that if the manufacturer were a party to the action, liability for claimant's injury would have been imposed upon said manufacturer by reason of the doctrine of strict liability, to the extent of the equitable share of such manufacturer. See NY Civ. Prac. L. Art. 16 §1602(10).

316.    Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures upon which liability is based. See NY Civ. Prac. L. Art. 16 §1602(11).

317.    Defendants have construed the article to create or enlarge actions for contribution or indemnity barred because of the applicability of the workers' compensation law of this state, any other state or the federal government, or section 18-201 of the general obligation law.

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 92 of 115 PageID #: 102

## AND AS FOR A THIRTEENTH CAUSE OF ACTION
## FOR LOSS OF SERVICES

318. Plaintiffs reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

319. That at all times hereinafter mentioned, the plaintiffs DEAN NASCA AND MICHELLE NASCA, were the parents and distributees, as defined by the E.P.T.L., of the decedent plaintiff, CHASE NASCA, and as such plaintiff, DEAN NASCA AND MICHELLE NASCA was entitled to the society and services of the decedent plaintiff, CHASE NASCA.

320. By reason of the afore-described negligence of the defendants, the plaintiffs, DEAN NASCA AND MICHELLE NASCA, was deprived of the society and services of the decedent plaintiff, CHASE NASCA, and shall forever be deprived of said society and services.

321. As a result of the afore-described negligence, the plaintiffs, DEAN NASCA AND MICHELLE NASCA has expended diverse sums of money in payment of the expenses incurred for funeral expenses, burial costs, medical care, treatment and hospitalization for the decedent plaintiff, CHASE NASCA.

322. That as a result of the negligence of defendants as aforesaid, the plaintiffs, DEAN NASCA AND MICHELLE NASCA, as the Administrator of the Estate of CHASE NASCA, deceased, sustained damages in an amount exceeding the jurisdictional limits of all the lower courts.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all defendants for relief as follows:

1.      Past physical and mental pain and suffering of Chase Nasca, in an amount to be more readily ascertained at the time and place set for trial;

2.      Loss of enjoyment of life, in an amount to be more readily ascertained at the time and place set for trial;

3.      Past and future impairment to capacity to perform everyday activities;

4.      Plaintiffs' pecuniary loss and loss of Chase Nasca's services, comfort, care, society, and companionship to Dean and Michelle Nasca;

5.      Loss of future income and earning capacity of Chase Nasca;

6.      Punitive damages;

7.      Injunctive relief, including, but not limited to, ordering Defendant TikTok to stop the harmful conduct alleged herein, remedy the unreasonably dangerous recommendation technologies in its social media products, and provide warnings to minor users and their parents that Defendant TikTok's social media product is addictive and pose a clear and present danger to unsuspecting minors;

8.      Reasonable costs and attorney and expert/consultant fees incurred in prosecuting this action; and

9.      Such other and further relief as this Court deems just and equitable.

WHEREFORE, plaintiffs, DEAN NASCA AND MICHELLE NASCA, as the Administrator of the Estate of CHASE NASCA, and DEAN NASCA AND MICHELLE NASCA, Individually, demands judgment both compensatory and exemplary in an amount exceeding the jurisdictional limits of all lower Courts on all causes of action, together with attorney's fees and the costs and disbursements of this action.

Dated: New York, New York
            March 21, 2023

BELLUCK & FOX, LLP
Harris Marks
hmarks@belluckfox.com
546 5th Avenue, 5th Floor
New York, New York 10036

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 94 of 115 PageID #: 104

Tel: (212) 681-1575
*Attorneys for Plaintiffs*

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
Matthew P. Bergman
matt@socialmediavictims.org
Laura Marquez-Garrett
laura@socialmediavictims.org
Glenn S. Draper
glenn@socialmediavictims.org
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 741-4862
Facsimile: (206) 957-9549
(*Pro Hac Vice* admission pending)
*Attorneys for Plaintiffs*

90

Case 2:24-cv-02061-NGG-JMW     Document 1-1     Filed 03/26/24     Page 95 of 115 PageID #: 105

## ATTORNEY VERIFICATION

STATE OF NEW YORK )
                  )
COUNTY OF NEW YORK          )

**HARRIS MARKS**, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am the attorney for the Plaintiffs in the above entitled-action. I have read the foregoing **VERIFIED COMPLAINT** and know the contents thereof, and upon information and belief, affirmant believes after an inquiry reasonable under the circumstances the matters alleged herein to be true, and that the contentions herein are not frivolous, as that term is defined in part 130.

The reason this verification is made by affirmant and not by Plaintiffs is that the Plaintiffs herein resides in a County other than the County in which I maintain my offices.

The source of affirmant's information and the grounds of his belief are communications, papers, reports and investigations contained in the file maintained by this office.

Dated: New York, New York
       March 21, 2023

BELLUCK & FOX, LLP

*Harris Marks*

Harris Marks
Attorneys for Plaintiffs
546 5th Avenue, 5th Floor
New York, New York 10036
Tel: (212) 681-1575

91

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

DEAN NASCA and MICHELLE NASCA, *as*
*Administrators of the Estate of* CHASE NASCA,
DEAN NASCA, and MICHELLE NASCA,
*individually*,

                     Plaintiffs,

    -against-

BYTEDANCE LTD.; BYTEDANCE, INC.;
TIKTOK, INC.; METROPOLITAN
TRANSPORTATION AUTHORITY; MTA LONG
ISLAND RAILROAD, LONG ISLAND
RAILROAD and the TOWN OF ISLIP,

                     Defendants

Index No.: 607250/2023

**NOTICE OF MOTION FOR**
**PRO HAC VICE ADMISSION OF**
**MATTHEW P. BERGMAN, ESQ.**

_____

       PLEASE TAKE NOTICE, that upon the annexed affirmation of Harris Marks affirmed the 22nd day of March, 2023, the affidavit of Matthew P. Bergman, Esq., sworn to on the 20th day of March, 2023, together with the Exhibits annexed thereto, the undersigned will move this Court, at the Courthouse located at 400 Carleton Avenue, Courtroom S-33, Central Islip, New York 11722 on May 10, 2023 at 9:30 A.M. or as soon thereafter as counsel may be heard in support of the instant motion seeking an Order:

       a)     PERMITTING the admission, *pro hac vice*, of Matthew P. Bergman to participate as counsel for the plaintiffs in all phases of the litigation of this matter, including trial; and

       b)     AWARDING plaintiff such other and further relief as is just and proper under the circumstances.

       Pursuant to CPLR§2214(b), answering affidavits, if any, are required to be served upon the undersigned at least seven (7) days before the return date of this motion.

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 97 of 115 PageID #: 107

Dated: New York, New York
March 22, 2023

Yours, etc.,

_____

HARRIS MARKS
BELLUCK & FOX LLP
*Attorney for the Plaintiffs*
546 Fifth Avenue, 5th Floor
New York, New York 10036
(212) 681-1575

TO:

DEFENDANTS

(Addresses listed on Affidavit of Service)

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 98 of 115 PageID #: 108

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

DEAN NASCA and MICHELLE NASCA, *as
Administrators of the Estate of* CHASE NASCA,
DEAN NASCA, and MICHELLE NASCA,
*individually*,

                    Plaintiffs,

   -against-

BYTEDANCE LTD.; BYTEDANCE, INC.;
TIKTOK, INC.; METROPOLITAN
TRANSPORTATION AUTHORITY; MTA LONG
ISLAND RAILROAD, LONG ISLAND
RAILROAD and the TOWN OF ISLIP,

                  Defendants.

Index No.: 607250/2023

**AFFIRMATION IN SUPPORT OF
APPLICATION TO ADMIT
MATTHEW P. BERGMAN, ESQ.,
<u>PRO HAC VICE</u>**

---

    **Harris Marks,** an attorney duly admitted to practice before the Courts of the State of

New York, affirms the following statements to be true under the penalties of perjury:

    1.     I am an attorney for Dean and Michelle Nasca (hereinafter "Plaintiffs") in the

above-captioned action.

    2.     I submit this affirmation pursuant to 22 NYCRR § 602.2, in support of the instant

application on behalf of Plaintiff for admission <u>pro hac vice</u> of Matthew P. Bergman, Esq. to the

Supreme Court of the State of New York for the purpose of assisting in the representation of

Plaintiffs in the above-referenced action.

    3.     Matthew P. Bergman, Esq. is a licensed attorney and an active member in good

standing in the State of Washington (Bar ID 20894) and in the State of Oregon (Bar ID 894335).

    4.     A copy of Mr. Bergman's Affidavit in Support is attached hereto as "**Exhibit A.**"

    5.     A certificate of conformity for Mr. Bergman's affidavit is attached hereto as

"**Exhibit B.**"

6. A copy of Mr. Bergman's Certificate of Good Standing issued by the State Bar of Washington and Oregon is attached hereto as "**Exhibit C.**"

7. Annexed hereto as "**Exhibit D**" is a proposed order.

WHEREFORE**,** it is respectfully requested that the Court sign the attached Order admitting John Matthew P. Bergman, Esq. pro hac vice to the Supreme Court of the State of New York for purposes of assisting in the representation of the Plaintiff.

Dated: New York, New York
March 22, 20213

Yours, etc.,

_____
HARRIS MARKS
BELLUCK & FOX LLP
*Attorney for the Plaintiffs*
546 Fifth Avenue, 5th Floor
New York, New York 10036
(212) 681-1575

2 of 2

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 100 of 115 PageID #: 110

# EXHIBIT A

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 101 of 115 PageID #: 111

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

DEAN NASCA and MICHELLE NASCA, *as Administrators of the Estate of* CHASE NASCA, DEAN NASCA, and MICHELLE NASCA, *individually,*

Plaintiffs,

-against-

BYTEDANCE LTD.; BYTEDANCE, INC.; TIKTOK, INC.; METROPOLITAN TRANSPORTATION AUTHORITY; MTA LONG ISLAND RAILROAD, LONG ISLAND RAILROAD and the TOWN OF ISLIP,

Defendants.

Index No.: 607250/2023

**AFFIRMATION OF MATTHEW P. BERGMAN**

**Matthew P. Bergman,** an attorney duly admitted to practice before State of Washington affirms the following statements to be true under the penalties of perjury:

1.     I am an attorney at law and a member of the bar of the State of Washington. I make this declaration in support of my application to appear in this action *pro hac vice* on behalf of Plaintiffs Dean and Michelle Nasca.  All of the matters stated herein are of my own personal knowledge and, if called as a witness, I would and could testify competently thereto.

2.     I am currently a resident of the State of Washington. My business address is Social Media Victims Law Center PLLC, 821 Second Avenue, Suite 2100, Seattle, WA 98104.

3.     I was admitted to practice law in all courts in the State of Washington (1991)(Bar ID 20894) in Washington and in all courts in the State of Oregon (1989)(Bar ID 894335) in Oregon.

4.     I am a member in good standing in the above-described Court(s).  I am not currently, nor have I ever been, disciplined, suspended or disbarred from any court.

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 102 of 115 PageID #: 112

5.      I am not a resident of the State of New York. I am not regularly employed in the State of New York, nor am I regularly engaged in substantial business, or other activities in the State of New York.

6.      By this application, I request *pro hac vice* permission from the Court to appear as co-counsel on behalf of Plaintiffs.

7.      Harris Marks (NY Bar No. 5017090) of Belluck & Fox, LLP., 546 Fifth Avenue, 5th floor, New York, New York 10036, is the existing attorneys of record on this matter and shall continue to act as co-counsel in this matter.

Executed on March 20, 2023, at Seattle, Washington.

I declare under penalty of perjury that the following is true and correct.

_____
Matthew P. Bergman, Esq.

Sworn to before me on the
20 day of March, 2023

Notary Public

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 103 of 115 PageID #: 113

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

DEAN NASCA and MICHELLE NASCA, *as
Administrators of the Estate of* CHASE NASCA,
DEAN NASCA, and MICHELLE NASCA,
*individually*,

                Plaintiffs,

   -against-

BYTEDANCE LTD.; BYTEDANCE, INC.;
TIKTOK, INC.; METROPOLITAN
TRANSPORTATION AUTHORITY; MTA LONG
ISLAND RAILROAD, LONG ISLAND
RAILROAD and the TOWN OF ISLIP,

                Defendants.

Index No.: 607250/2023

**CERTIFICATE OF
CONFORMITY**

---

**Harris Marks**, an attorney duly admitted to practice law before the courts of the

State of New York, hereby affirms the following to be true:

      1.      I am an associate with the law firm Belluck & Fox, LLP, located at 546 Fifth

Avenue, 5th Floor, New York, New York 10036.

      2.      I am an attorney duly admitted to practice law before the Courts of the State of New

York.

      3.      I am qualified to make this certificate of conformity pursuant to CPLR § 2309.

      4.      I am fully acquainted with the laws of the State of Washington pertaining to the

administration and taking of oaths and affirmations.

      5.      The attached affidavit by Matthew P. Bergman, named in the foregoing instrument,

taken before the State of Washington notary public, on March 20, 2023, was taken in the manner

prescribed by the laws of the State of Washington.

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 105 of 115 PageID #: 115

6.      The oath conforms with the laws of Washington, and it is in all respects valid and effective in the State of Washington.

7.      Accordingly the affidavit is admissible in New York in connection with the above-captioned action pursuant to the CPLR.

In Witness Whereof, I have signed this certificate on March 22, 2023.

_____

HARRIS MARKS
BELLUCK & FOX LLP
*Attorney for the Plaintiffs*
546 Fifth Avenue, 5th Floor
New York, New York 10036
(212) 681-1575

# EXHIBIT C

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 107 of 115 PageID #: 117

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE ADMISSION | ) | BAR NO. 20894 |
| OF | ) | **CERTIFICATE** |
| MATTHEW PHINEAS BERGMAN | ) | **OF** |
| TO PRACTICE IN THE COURTS OF THIS STATE | ) | **GOOD STANDING** |

I, Sarah R. Pendleton, Deputy Clerk of the Supreme Court of the State of Washington, hereby certify

**MATTHEW PHINEAS BERGMAN**

was regularly admitted to practice as an Attorney and Counselor at Law in the Supreme Court and all the Courts of the State of Washington on November 13, 1991, and is now and has continuously since that date been an attorney in good standing, and has a current status of active.



IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of this Court on the 9th day of May, 2022.

Sarah R. Pendleton
Supreme Court Deputy Clerk
Washington State Supreme Court



# Certificate of Good Standing

State of Oregon          )
                         )  ss.
County of Washington     )

I, Troy Wood, do hereby certify that I am Regulatory Counsel of the Oregon State Bar, and have access to the official files and records of the Oregon State Bar.

The official files and records of the Oregon State Bar indicate:

**MATTHEW BERGMAN, BAR NO. 894335**

was admitted to practice law in the State of Oregon by examination and became an active member of the Oregon State Bar on October 30, 1989.

There are no grievances or disciplinary proceedings presently pending against this member.

No disciplinary action has been taken against this member in the past by the Oregon Supreme Court or the Oregon Disciplinary Board.

Mr. Bergman is an active member of the Oregon State Bar in good standing, licensed and entitled to practice law in all the courts of the State of Oregon.

DATED this 9th day of May, 2022.

Troy Wood
Regulatory Counsel
Oregon State Bar

Case 2:24-cv-02061-NGG-JMW Document 1-1 Filed 03/20/24 Page 109 of 115 PageID #: 119

# EXHIBIT D

Case 2:24-cv-02061-NGG-JMW   Document 1-1   Filed 03/20/24   Page 110 of 115 PageID #: 120

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

DEAN NASCA and MICHELLE NASCA, *as*
*Administrators of the Estate of* CHASE NASCA,
DEAN NASCA, and MICHELLE NASCA,
*individually*,

                    Plaintiffs,

          -against-

BYTEDANCE LTD.; BYTEDANCE, INC.;
TIKTOK, INC.; METROPOLITAN
TRANSPORTATION AUTHORITY; MTA LONG
ISLAND RAILROAD, LONG ISLAND
RAILROAD and the TOWN OF ISLIP,

                    Defendants.

Index No.: 607250/2023

Hon. _____

**DECISION & ORDER**

Plaintiffs' motion for the <u>pro hac vice</u> admission for Matthew P. Bergman, Esq., an attorney licensed in the State of Washington, is granted without opposition and it is hereby:

ORDERED that Matthew P. Bergman, Esq. is permitted to appear and to participate in this action on behalf of plaintiff; and it is further

ORDERED that he shall at all times during this action be associated with counsel who is a member in good standing of the Bar of the State of New York and is attorney of record for the aforesaid party in question; and it is further

ORDERED that all pleadings, briefs and other papers filed with the court shall be signed by the attorney or record, who shall be responsible for such papers and for the conduct of this action; and it is further

ORDERED that, pursuant to 22 N.Y.C.R.R. §§520.11 and 602.2, the attorney hereby admitted pro hoc vice shall abide by the standards of professional conduct imposed by the members of the New York Bar, including the rules of the court governing the conduct of the

attorneys and the Rules of Professional Conduct; and it is further;

ORDERED that she shall be subject to jurisdiction of the courts of the State of New York with respect to any acts occurring during the course of his participation in this matter; and it is further

ORDERED that said counsel shall notify the court immediately of any matter or event in this or any other jurisdiction that affects his standing as a member of the bar.

The foregoing is the order of this court. A copy of this order has been sent to counsel for movant.

Dated:          New York, New York
                _____, 2023

_____
HON.                      , J.S.C.

ENTER:

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 112 of 115 PageID #: 122

UCS-840
(rev. 02/01/2022)

# REQUEST FOR JUDICIAL INTERVENTION

Supreme COURT, COUNTY OF Suffolk

Index No: _____607250/2023_____     Date Index Issued: _____03/22/2023_____

| | **For Court Use Only:** |
|---|---|
| | **IAS Entry Date** |

**CAPTION**    Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

Dean Nasca as Administrators of the Estate of CHASE NASCA, MICHELLE NASCA as Administrators of the Estate of CHASE NASCA, DEAN NASCA individually, MICHELLE NASCA INDIVIDUALLY

Plaintiff(s)/Petitioner(s)

-against-

BYTEDANCE LTD., BYTEDANCE, INC., TIKTOK, INC., METROPOLITAN TRANSPORTATION AUTHORITY, MTA LONG ISLAND RAILROAD, LONG ISLAND RAILROAD, the TOWN OF ISLIP

Defendant(s)/Respondent(s)

**Judge Assigned**

**RJI Filed Date**

**NATURE OF ACTION OR PROCEEDING:**    Check only one box and specify where indicated.

**COMMERCIAL**
- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (specify): _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**TORTS**
- ☐ Adult Survivors Act
- ☒ Asbestos
- ☐ Environmental (specify): _____
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability (specify): _____
- ☐ Other Negligence (specify): _____
- ☐ Other Professional Malpractice (specify): _____
- ☐ Other Tort (specify): _____

**SPECIAL PROCEEDINGS**
- ☐ Child-Parent Security Act (specify): ☐ Assisted Reproduction ☐ Surrogacy Agreement
- ☐ CPLR Article 75 - Arbitration    [see *NOTE* in **COMMERCIAL** section]
- ☐ CPLR Article 78 - Proceeding against a Body or Officer
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 - Kendra's Law
- ☐ MHL Article 10 - Sex Offender Confinement (specify): ☐ Initial ☐ Review
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (specify): _____
- ☐ Other Special Proceeding (specify): _____

**MATRIMONIAL**
- ☐ Contested

  *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI Addendum (UCS-840M).*

  *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**REAL PROPERTY**  Specify how many properties the application includes: _____
- ☐ Condemnation
- ☐ Mortgage Foreclosure (specify): ☐ Residential ☐ Commercial

  Property Address: _____

  *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*
- ☐ Partition

  *NOTE: Complete and attach the PARTITION RJI ADDENDUM (UCS-840P).*
- ☐ Tax Certiorari (specify):   Section: _____ Block: _____ Lot: _____
- ☐ Tax Foreclosure
- ☐ Other Real Property (specify): _____

**OTHER MATTERS**
- ☐ Certificate of Incorporation/Dissolution   [see *NOTE* in **COMMERCIAL** section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (specify): _____

**STATUS OF ACTION OR PROCEEDING**    Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☒ | ☐ | If yes, date filed: _____03/21/2023_____ |
| Has a summons and complaint or summons with notice been served? | ☐ | ☒ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION**    Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental or Podiatric Malpractice    Date Issue Joined: _____
- ☒ Notice of Motion    Relief Requested: Pro Hac Vice    Return Date: _____
- ☐ Notice of Petition    Relief Requested: _____    Return Date: _____
- ☐ Order to Show Cause    Relief Requested: _____    Return Date: _____
- ☐ Other Ex Parte Application    Relief Requested: _____
- ☐ Partition Settlement Conference
- ☐ Poor Person Application
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Writ of Habeas Corpus
- ☐ Other (specify): _____

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 113 of 115 PageID #: 123

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | | |
|---|---|---|---|---|
| **Case Title** | **Index/Case Number** | **Court** | **Judge (if assigned)** | **Relationship to instant case** |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| PARTIES | | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | |
|---|---|---|---|---|

| Un-Rep | Parties — List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants — For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined — For each defendant, indicate if issue has been joined. | Insurance Carriers — For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: Nasca, Dean<br>Role(s): Plaintiff/Petitioner | HARRIS MARKS, Belluck & Fox LLP, 546 Fifth Avenue, 5th Floor , New York, NY  10036, 212-681-1575, hmarks@belluckfox.com | ☒ YES  ☐ NO | |
| ☐ | Name: NASCA, MICHELLE<br>Role(s): Plaintiff/Petitioner | Harris Marks, Belluck & Fox, 546 5th Avenue, 5th Floor, New York, NY  10036, 2126811575, abelenkaya@belluckfox.com | ☒ YES  ☐ NO | |
| ☐ | Name: DEAN NASCA<br>Role(s): Plaintiff/Petitioner | HARRIS MARKS, Belluck & Fox LLP, 546 Fifth Avenue, 5th Floor , New York, NY  10036, 212-681-1575, hmarks@belluckfox.com | ☒ YES  ☐ NO | |
| ☐ | Name: NASCA, MICHELLE<br>Role(s): Plaintiff/Petitioner | Harris Marks, Belluck & Fox, 546 5th Avenue, 5th Floor, New York, NY  10036 | ☒ YES  ☐ NO | |
| ☒ | Name: BYTEDANCE LTD.<br>Role(s): Defendant/Respondent | 5800 Bristol Parkway, Suite 100, Culver City, CA  90230 | ☐ YES  ☒ NO | |
| ☒ | Name: BYTEDANCE, INC.<br>Role(s): Defendant/Respondent | C/O Corporation Service Co., 80 State Street, Albany, NY  12207 | ☐ YES  ☒ NO | |
| ☒ | Name: TIKTOK, INC.<br>Role(s): Defendant/Respondent | 5800 Bristol Parkway, Suite 100, Culver City, CA  90230 | ☐ YES  ☒ NO | |
| ☒ | Name: METROPOLITAN TRANSPORTATION AUTHORITY<br>Role(s): Defendant/Respondent | 2 Broadway, New York, NY  10017 | ☐ YES  ☒ NO | |
| ☒ | Name: MTA LONG ISLAND RAILROAD<br>Role(s): Defendant/Respondent | Jamaica Station, Jamaica, NY  11435 | ☐ YES  ☒ NO | |
| ☒ | Name: LONG ISLAND RAILROAD<br>Role(s): Defendant/Respondent | Jamaica Station, Jamaica, NY  11435 | ☐ YES  ☒ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER  RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:  03/22/2023

HARRIS LEE MARKS
_____
Signature

_____
5017090
Attorney Registration Number

HARRIS LEE MARKS
_____
Print Name

*This form was generated by NYSCEF*

Case 2:24-cv-02061-NGG-JMW    Document 1-1    Filed 03/20/24    Page 114 of 115 PageID #: 124

# Request for Judicial Intervention Addendum

UCS-840A (7/2012)

Supreme COURT, COUNTY OF Suffolk

**Index No:**  607250/2023

**For use when additional space is needed to provide party or related case information.**

**PARTIES:**    For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in "Attorneys" space.

| Un-Rep | Parties | Attorneys and Unrepresented Litigants | Issue Joined | Insurance Carriers |
|---|---|---|---|---|
| | List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | For represented parties, provide attorney's name, firm name, address, phone and email.  For unrepresented parties, provide party's address, phone and email. | For each defendant, indicate if issue has been joined. | For each defendant, indicate insurance carrier, if applicable. |
| ☒ | Name: the TOWN OF ISLIP<br><br>Role(s): Defendant/Respondent | 655 Main Street, Islip, NY  11751 | ☐ YES  ☒ NO | New York |

**RELATED CASES:**    List any related actions. For Matrimonial actions, include any related criminal and/or Famiy Court cases.

Case 2:24-cv-02061-NGG-JMW   Document 1-1   Filed 03/20/24   Page 115 of 115 PageID #: 125

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

|  |  |
|---|---|
| DEAN NASCA and MICHELLE NASCA, *as Administrators of the Estate of* CHASE NASCA, DEAN NASCA, and MICHELLE NASCA, *individually*,<br><br>      Plaintiffs,<br><br>v.<br><br>BYTEDANCE LTD.; BYTEDANCE INC.; TIKTOK INC.; METROPOLITAN TRANSPORTATION AUTHORITY; MTA LONG ISLAND RAILROAD; LONG ISLAND RAILROAD; and the TOWN OF ISLIP,<br><br>      Defendants. | Index No. 607250/2023 |

### NOTICE TO STATE COURT OF FILING NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** the Defendants ByteDance Inc. and TikTok Inc. filed a notice of removal in the United States District Court for the Eastern District of New York. Attached as Exhibit A is a copy of that notice of removal.

Dated: April 13, 2023                    Respectfully submitted,

                                       /s/ *Kristen Fournier*

                                       **KING & SPALDING LLP**
                                       Kristen R. Fournier
                                       1185 Avenue of the Americas, 34th Floor
                                       New York, NY 10036-2601
                                       Telephone: + 1 (212) 556 2100
                                       Facsimile: + 1 (212) 556 2222

                                       *Attorney for Defendants ByteDance Inc. and TikTok Inc.*